When the property in question was delivered on board the steamboat at Detroit, marked and consigned to Leander Warner, Leicester, Massachusetts, it was so delivered for transportation to that place.
It was known to the shipper, doubtless, that the steamboat Hudson could carry it no further than Buffalo; and it was *Page 366 
therefore consigned to the care of the defendants at that place, who were carriers upon the Erie canal, to be carried or forwarded by them by canal, in the regular course of business, to Albany, and then to deliver the same at East Albany, at the railroad depot, to be further transported by the Western Railroad Company, via Clappville depot, to Leicester, Massachusetts. The direction upon the bill of lading, consigning the leather to the care of the defendants at Buffalo, made it the duty of the master of the steamboat to deliver it to them, and gave them the right to receive it from him; and thus secured to the defendants the profits incident to the transhipment, storage and carriage of the property, until its transportation by canal was completed, and the property delivered at the railroad depot at East Albany.
No right or duty in respect to such property was conferred by the owner upon any person, after its delivery on board the steamboat at Detroit, except that of carriage, and such as was incident to its transportation, until its delivery to the consignee at Leicester, Massachusetts. The proprietors of the steamboat Hudson received it as carriers, and so did the defendants, subject, respectively, to all the duties and responsibilities of common carriers.
These goods were placed by the defendants in their warehouse, for their own convenience and for the purpose of being carried; and when goods are so stored, the carrier is responsible for their safe keeping. (Angell on Carriers, § 131, p. 130, and § 144; Story on Railroads, 536.)
The owner of this property had no occasion to have the same placed in a warehouse at Buffalo for any purpose except such as pertained to its safe keeping during its transportation. It was not intended to be stored in warehouses at Buffalo for any purpose. It might doubtless have been transferred immediately from the steamboat to some canal boat at Buffalo; but if the defendants chose for any purpose to put it in their warehouse, it was to subserve their interests, and was at their own risk. The claim of the defendants to escape responsibility for the loss of these goods, upon the ground that they *Page 367 
were simply warehousemen, and received them in that capacity, we think entirely untenable.
When a person is both carrier and warehouseman, it is well settled that, if the deposit of the goods in the warehouse is a mere accessory to the carriage, and not subject to any particular order of the owner, or if they are deposited for the purpose of being carried further, the responsibility of the party having them in charge is that of a carrier. (Ang., § 133, and Blossom
v. Griffin, 3 Kern., 569, 572.) But when goods are deposited in a warehouse subject to the further order of the owner, the case is otherwise. In such case, as Judge BULLER said, in Garside v.The Proprietors of the Trent and Mersey Navigation Company (4 Term, 581), "The keeping of the goods in the warehouse is not for the convenience of the carrier, but of the owner of the goods. In such case, the rights and duties and responsibilities of warehousemen would attach to the person having the goods in store." But this rule cannot apply to any person having the charge or custody of the goods while they are in transitu. While the goods are in the process of transportation from the place of their receipt to the place of their destination, it will never do in this country, in my opinion, to subject them, in the hands of any carrier, or by his act or order, to the responsibilities of a mere warehouseman. The carrier at common law is an insurer of the goods as against all accidents and perils, except such as result from the act of God or a public enemy. A warehouseman is only responsible for ordinary care, and is merely responsible for loss or injury resulting from his own default or negligence. Millions of property in value in this country is in the constant possession of carriers engaged in transporting it from one place to another. In this particular, it may truly be said that men cast their bread upon the waters, expecting to see it again at a distant point after many days. Goods are shipped, and delivered to carriers by land, at the seaboard or in the interior of the country, for transportation to distant points, with a simple direction indorsed of the name of the owner or consignee and the place of delivery. It would never do to hold *Page 368 
that at any intermediate point such goods, at the option of a carrier, might be stored in a warehouse, and the carrier relieved thereby of his proper responsibility. If the defendants had owned the steamboat in which these goods were shipped at Detroit, no one would pretend, I think, that they could store them at Buffalo in a warehouse, at the risk of the owner, for their own convenience.
I conceive the responsibility of the defendants, in respect to these goods, after they came in their possession, precisely the same, so far as related to their storage at Buffalo, as though they had been carriers for the whole distance from Detroit to Leicester, Massachusetts. Where there are several successive carriers who are engaged in the transportation of goods from the place of their reception to the place of their destination, the liability of each carrier will commence with the reception of the goods, and will continue until they are delivered, according to the usage of the business, to the next carrier in the line of the transit. (Vanhouten v. St. John, 6 Hill, 158.) When a carrier deposits property in his own warehouse at some intermediate place in the course of his own route, or at the end of the route where it is his duty to deliver it to the owner, his duty as carrier is not completed, and he will remain liable as carrier for any loss for which common carriers are ordinarily responsible. (Story on Bailments, § 447, 536; Forward v. Pittard, 1 Term, 27; Hyde
v. Trent Navigation Company, 5 id., 380.) The defendants, I think, are responsible as carriers of the property in question upon the same principle. It was received and stored by them in their capacity or character as carriers as much as if they had received it at Detroit.
I think the judgment of the court below should be reversed, and a new trial granted, with costs, to abide the event.
DAVIES, WRIGHT, SELDEN and SUTHERLAND, Js., concurred.