LEWIS NORTHROP AND ANOTHER, APPELLANTS, *v.* THE SYRACUSE, B. & N. Y. R. R. CO., RESPONDENTS.

*Carrier—Consignee not found—Discharges Liability how.*

Where goods are delivered to a carrier for transportation, and they are safely transported to the place of destination, and the consignee is not on hand to receive them, the carrier may discharge his liability as such, by placing the goods in store with some responsible person in that business at the place of delivery.

*H. R. Mygatt* for Appellants.
*S. S. Davis* for Respondents.

DAVIES, CH.J.—The Defendants were common carriers, and agreed to transport for the Plaintiffs a certain quantity of wheat from Tully, in the County of Onondaga, to Chenango Forks, and which was duly transported by the Defendants upon their railway from Tully to Chenango Forks. Said wheat was in twenty-two bags, and directed to the Plaintiffs at Chenango Forks. The Plaintiffs resided fifteen miles east of Chenango Forks, at a place called Chester Village. It appears that no one being present to receive said bags of wheat on their arrival at their place of destination, the said bags of wheat were deposited by the Defendants in their freight house at Chenango Forks, at four o'clock in the afternoon of the 8th of August, 1859; that the Plaintiffs, on the afternoon of the ninth day of August, 1859, received notice that said bags of wheat had been sent from Tully to Chenango Forks; said bags of wheat were destroyed by fire before the actual delivery thereof to the Plaintiffs, on the night of the 9th of August, at about eleven o'clock; and that the Plaintiffs sent for said bags of wheat on the tenth day of August.

The precise point presented for adjudication in this case was decided by the Supreme Court of this State more than twenty years since (Fisk *v.* Newton, 1 Denio 45). In that case the

Court said : " So when goods are safely conveyed to the place of destination, and the consignee is dead, *absent,* or refuses to receive, or is not known and cannot after due efforts are made be found, the carrier may discharge himself from further responsibility, by placing the goods in store with some responsible third person in that business, at the place of delivery, for and on account of the owner. . . . The risk of the carrier ceased on the delivery of the goods in store." This seems to be the well-recognized rule, where the goods are carried to the point of ultimate destination — the place of delivery to the consignee (Thomas *v.* Boston & Prov. R. R. Co., 10 Metc. 472 ; Norway Plains Co. *v.* Boston & Maine R. R. Co. 1 Gray, 263). The case of Fisk *v.* Newton is cited approvingly by Johnson, Ch. J., in Goold *v.* Chapin (20 N. Y. 259) ; and the doctrine there enunciated is repeated and reaffirmed in the same case by Strong, J. He says: " It is not intended to decide that common carriers can in no case change their peculiar responsibilities, while they retain possession of the goods confided to them. They may not be able with due diligence to find any one to receive the goods in behalf of the owner, and there may not be any safe place of deposit within their reach, and in such case their duties as carriers would end, and they would then become mere ordinary bailees. They may also deposit the goods in their own warehouse, and thus absolve themselves from any further responsibility as common carriers. That, however, can only be where there has been a failure by the owner or his agent to receive them."

These views are specially pertinent to the case now under consideration. There the carrier, as carrier, had performed his whole duty as such. The goods had securely arrived at their place of destination. The consignee was absent, residing some fifteen miles distant. He had no agent to whom delivery could be made, or to whom notice could be given. Can the consignee, by his neglect of duty in this regard, continue the strict liability of the carrier until it shall suit his convenience or pleasure to call for the goods ? I think not, and the carrier can properly do

what he did in this case—deposit the same in a freight house—
and that then his strict liability as carrier ceased.  This Court
said, in the case of Goold *v.* Chapin, that the carrier could do this,
and then absolve himself from any further responsibility as
common carrier.  It is a misapprehension to suppose that any
contrary doctrine has been enunciated by this Court.  A brief
review of the cases will show this.  In Goold *v.* Chapin (ubi
supra) the goods were delivered to the Defendants in New York,
to be carried to Albany, and there to be delivered to another
carrier, to be transported to Brockport, N. Y.; and the parties to
whom the delivery was to be made at Albany, were to receive
the goods not as owners, but as carriers.  Instead of delivering
the goods to the carrier, who was further to transport them, or
depositing them in a warehouse until called for by the carrier, the
Defendants placed them upon a float, where they remained for
several days, until consumed by fire.  And Judge Hunt, in his
opinion in McDonald *v.* Western R. R. Co. (34 N. Y. 497),
correctly states the point decided, thus : " This Court held that
the Defendants were liable as carriers; that the notice to the
Atlantic line, and their unreasonable neglect to take the goods,
did not exempt them ; that, to exempt themselves, the carriers
must store the goods in a warehouse, or in some other way clearly
indicate a renunciation of the relation of carrier ; " and he adds,
" The Court held that, as there was neither a deposit in a ware-
house, which would have indicated clearly a renunciation of the
carrier's liability, or a delivery to the carrier by canal, which
would have fulfilled the duty of the first carrier, the Defendants
were liable."  In Ladue *v.* Griffiths (25 N. Y. 364) the facts
were that a warehouseman at Buffalo, who was also a carrier on
the Erie Canal, used to receive freight from the West and forward
it to the East by the first boat going, whether his own or that
of other carriers.  He received goods shipped from Detroit,
addressed to his care at Buffalo, and marked to go from
" Buffalo to East Albany, at 30 cents per 100 lbs."  The
presumption, from these facts alone, this Court held, was, that
the goods came to his possession as a carrier, and having been

burned without his fault, while in his warehouse awaiting transportation, he was liable for their value. This decision was placed on the distinct ground that public policy, in this country of long routes and frequent transshipment, forbids any intendment which would favor an intermediate carrier in divesting himself of that character and assuming the more, limited responsibility of a forwarder. In McDonald *v.* Western R. R. Co. (ubi supra) it was held that " where goods were shipped and must pass through the hands of several intermediate carriers before arriving at the place of their destination, the duty of each intermediate carrier is to transport the goods safely to the end of his route, and deliver them to the next carrier on the route beyond. That an intermediate carrier, in such case, does not relieve himself from liability by simply unloading the goods at the end of his route, and storing them in his warehouse, without delivery, or notice to, or any attempt to deliver to, the next carrier."

These cases are all based upon the controlling fact, that the carrier in whose custody the property was destroyed was an intermediate carrier, and that in no instance had the goods reached their ultimate destination. That such intermediate carrier could not change the character of his liability by a deposit of the goods in a warehouse. But not one of these cases infringe upon the doctrine of Fisk *v.* Newton, but on the contrary, recognize it as sound law. We think the rule laid down in this latter case is controlling upon that now under consideration, and that upon the circumstances discussed in this case, the liability of these Defendants as common carriers ceased when they safely transported the property in question to the point agreed upon, and that the consignees being absent at the time of its delivery, and they having no agent there to receive the same, or to whom it could be delivered, or to whom notice of its arrival could be given, it was the duty of the carrier and his whole duty to deposit the same in a warehouse, and therefore these Defendants ceased to be liable as common carriers.

The judgment appealed from should be affirmed, with costs.

BOCKES, J.—The parties made and presented a case to the Supreme Court for adjudication, without action, pursuant to section 372 of the Code of Procedure. Judgment was ordered for the Defendants, and the Plaintiffs appealed to this Court.

The case agreed upon by the parties discloses the following facts: The Defendants, on the 8th of August, 1859, received from the Plaintiffs, at Tully, for transportation, twenty-two bags of wheat, directed to them at Chenango Forks. The property arrived at the latter place on the same day, and was, at 4 P. M., placed in the Defendants' freight house, where it remained, without actual delivery to the Plaintiffs, until the next succeeding evening, when, at about 11 o'clock, it was, with the freight house, destroyed by an accidental fire. The Plaintiffs were merchants and millers, and resided at Centre Village, fifteen miles from the depot at Chenango Forks. They received notice that the wheat had been sent forward from Tully to the Forks on the afternoon of the 9th, and sent for it on the following day, when they learned that it had been destroyed by fire the evening previous.

The question is whether, on the facts stated, the Defendants were discharged from their liability as common carriers. It seems they had conveyed the property safely to its place of destination, and, no one being there to whom they could make delivery, it was deposited, according to the usual course of business, in the freight house. While the Defendants were bound to deliver the property according to the usual course of trade or business, they were not required to go or send to the Plaintiffs' residence, fifteen miles away, either to make delivery there or to notify them of its arrival. Having transported it safely and with reasonable despatch to the place of destination, and having held it there uninjured for a reasonable time, ready for delivery, the carrier was absolved from liability, as such, in a case like this, where the party resided at a distance, and had no agent at the place to whom notice of its arrival could be given. According to the decisions in Massachusetts, railroad companies, as common carriers, are discharged when they have transported the goods safely and with diligence to the place of destination, and deposited them in their

warehouse, after a reasonable time has elapsed for the owner or consignee to examine them and take them away (1 Gray, 263 ; 10 Metc. 472) ; and it was held in these cases that carriers (railroad companies) were not bound to give notice of the arrival of the goods.   In the latter case above cited, it was said that railroad companies, from the nature of their business and from the means employed, could not deliver goods at the warehouse of the owner, when situated off the line of the road, as a common wagoner could do ; that when they had transported the property safely to the place of destination, and stored it safely in their depot, or warehouse, their duty as common carriers terminated.   In this State, however, it would seem to be requisite that notice of its arrival should be given to the consignee, in case he resides or has a place of business at the place of destination, or in its immediate vicinity.   But it is not necessary here to consider the question whether the liability of a railroad company, as common carriers, continues until they notify the consignee of the arrival of the goods, and until a reasonable time thereafter has elapsed to remove them, in a case where the consignee resides at the place of consignment, or has an agent there to receive them. The facts in this case do not raise this question.   The rule is stated in general terms, that the common carrier is bound for the diligent and safe transportation of the goods, and for their delivery to the owners or consignees, according to the usual course of business and the nature of his contract.   If there be no person at the place of destination to receive the goods, it is enough that they are placed on deposit in a warehouse, and after a reasonable time has elapsed for their examination and removal, his liability as carrier ceases.

The application of these principles to the case before the Court will exonerate the Defendants from liability.   The property had arrived at its place of destination in safety, and had remained in the freight house uninjured one full day and part of another.   It had not been called for, nor did the owner and consignee reside in the vicinity.   It was placed safely in deposit for the owner, and remained so sufficiently long for examination and delivery.

Its destruction after that period by an accidental fire created no liability against the Defendants.

The judgment appealed from should be affirmed, with costs.

All concurred.

Affirmed.

JOEL TIFFANY,
State Reporter.
