MANDANA D. FENNER, Respondent, *v.* THE BUFFALO AND
STATE LINE RAILROAD COMPANY, Appellant.

The duty of common carriers by railroad, as to the delivery of goods at the
place of destination, is subject to the following rules: If the consignee is
present upon their arrival, he must take them without unreasonable delay.
If he is not present, but lives at or in the immediate vicinity of the place
of delivery, the carrier must notify him of their arrival, and he then has
a reasonable time within which to remove them. If he is absent,
unknown, or cannot be found, then the carrier can place them in its
freight-house, and, if the consignee does not call for them in a reasonable
time, the liability as a common carrier ceases. If the consignee has a
reasonable opportunity to remove them and does not, he cannot hold the
carrier as an insurer.

When the consignee has notice of the arrival of his goods, and, without
any refusal or unwillingness to deliver on the part of the carrier, agrees
with the latter, for their mutual convenience, that the goods be left over
night in the freight-house, the liability as a common carrier has ceased,
and the goods being destroyed by fire during the night, the company
cannot be held as an insurer.

When goods are shipped by railroad to a specified point, whence the owner
intends to remove them to their final destination, the railroad company
is not an intermediate carrier and the rules applicable are those which
govern at a place of destination.

(Argued for the appellant and submitted for the respondent, January 14th;
decided May 6, 1871.)

ON or about the 24th of May, 1861, certain household fur-
niture, belonging to the plaintiff, was delivered to the defend-
ant, marked and directed to F. P. Fenner, Dunkirk, N. Y.,
and the defendant carried said furniture over its railroad to

Dunkirk.   The furniture was in fact in course of transportation to Sinclairville, Chautauqua County, N. Y., a place a short distance from Dunkirk, but this fact was not known to the defendant until after the arrival of the furniture at Dunkirk.

The furniture arrived at Dunkirk during the afternoon of May 24th, and was unloaded and placed in a suitable freight-house of the defendant.   During the latter part of the same afternoon, Alfred Austin, a teamster, engaged in the business of carrying goods by team between Dunkirk and Sinclairville, who was authorized by the plaintiff to obtain the furniture for her, called at the office of the defendant at Dunkirk with his team, and asked for the furniture, and having ascertained that it had arrived, paid the freight thereon and signed a receipt therefor.   He then went to the employe of the defendant, whose business it was to attend to the delivery of the furniture, and found him engaged in the delivery of goods to other parties.   It was then nearly six o'clock, the hour at which the freight-house was ordinarily closed; and Austin having occasion to be in Dunkirk the next morning for other goods, it was then and there arranged between him and the employe, for their mutual convenience, that he should not wait for the furniture, but should call therefor the next morning.

During that night the freight-house was burned, and the furniture was wholly consumed, without any fault or negligence of the defendant.

The plaintiff thereafter commenced this action to recover the value of the furniture, and the same was put at issue and referred.   Upon the trial, in 1865, before the referee, the foregoing facts appeared, and the referee held and decided that the defendant was liable for the furniture as a common carrier, and gave judgment for the plaintiff for the value thereof.   From this judgment the defendant appealed to the General Term of the seventh district, and from judgment of affirmance there to this court.

The case below is reported, 46 Barbour, 103.

*Sherman S. Rogers*, for the appellant, cited *Thomas* v. *Bos. & Prov. R. Co.* (16 Metc., 477); *Norway Plains Co.* v. *Bost. & Maine R.* (1 Gray, 275); *McCarty* v. *N. Y. & E. R. Co.* (30 Penn. St., 247); *Ill. Cent. R. Co.* v. *Alexander* (20 Ill., 23); *Porter* v. *Chicago & R. I. R. Co.* (id., 407); *Richards* v. *Mich. S. R. Co.* (id., 404); *Davis* v. *Sance* (id., 412;) *Bausemer* v. *Tol. & W. R. Co.* (25 Ind., 434); *Cin. & Chic. R. Co.* v. *McCool* (26 id., 140); *Drury* v. *N. Y. C. R. Co.* (13 Gray, 487); *Northrop* v. *Sy., B. & N. Y. R. Co.* (2 Trans. App., 183); *McMillan* v. *M. S. & N. I. R. Co.* (16 Mich., 79, 123).

*Cox & Avery*, for the respondent, cited Angell on Carr., §§ 281, 282, 287, 296, 299, and cases cited; 2 Kent Com., 604, 6th ed.; *Merritt* v. *Earle* (29 N. Y., 117); *Miller* v. *Steam Nav. Co.* (10 N. Y., 431); *Gould* v. *Chapin* (20 N. Y., 266); *La Due* v. *Griffith* (25 N. Y., 364).

EARL, C. It is well settled in this State, that an intermediate carrier, one who receives goods to be transported over his route, and thence by other carriers to their place of destination, generally remains liable as a common carrier until he has delivered the goods to the next carrier. (*Miller* v. *Steam Navigation Co.*, 10 N. Y., 431; *Gould* v. *Chapin*, 20 N. Y., 266; *Ladue* v. *Griffith*, 25 N. Y., 364; *McDonald* v. *Western Railroad Corporation*, 34 N. Y., 497.) It was deemed wise policy that the principles of the common law should be so expounded and applied, that the liability of one carrier should continue until that of the next carrier commenced. Chief Judge JOHNSON, in *Gould* v. *Chapin*, says: "No owner can be supposed to have an agent to superintend each transshipment of his goods, in the course of a long line of transportation; and if the responsibility of each carrier is not continued until delivery in fact to the next carrier, or at least until the first carrier, by some act clearly indicating his purpose, terminates his relation as carrier, we shall greatly diminish the security and convenience of those whose pro-

perty is necessarily abandoned to others, with no safeguards save those which the rules of law afford." In *McDonald* v. *The Western Railroad Corporation*, Judge SMITH, speaking of the carriage of goods over successive lines, says: "The owner loses sight of his goods when he delivers them to the first carrier, and has no means of learning their whereabouts till he or the consignee is informed of their arrival at the place of destination. At each successive point of transfer from one carrier to another, they are liable to be placed in warehouses, there perhaps to be delayed by the accumulation of freight or other causes, and exposed to loss by fire or theft, without fault on the part of the carrier or his agents. Super-added to these risks, are the dangers of loss by collusion, quite as imminent while the goods are thus stored at some point unknown to the owner as while they are in actual transit. As a general rule, the storing under such circumstances should be held to be a mere accessory to the transportation, and the goods should be under the protection of the rule which makes the carrier liable as an insurer, from the time the owner trans-fers their possession to the first carrier till they are delivered to him at the end of the route." I have extracted this much from the opinions of these learned judges, to bring into view the grounds upon which the decisions were based, and to show that they apply only to intermediate carriers, and not to carriers who transport the goods to their final destination. That the principles laid down in these decisions should be thus limited, was held in the Court of Appeals, in the case of *Northrop* v. *Syracuse, B. and N. Y. R. R. Co.*, decided in 1867, and reported in 2 Trans. App., 183. In that case the defendant agreed to transport for the plaintiffs a certain quan-tity of wheat from Tully, in the county of Onondaga, to Chenango Forks, and did so transport the same. The wheat was in bags, and was marked, directed to the plaintiffs, at Chenango Forks, although they resided fifteen miles from there, at Chester village, where they intended to carry the wheat. No one being present for the plaintiffs to receive the wheat, on its arrival at Chenango Forks, it was deposited there

in the freight-house of the defendant, at four o'clock in the afternoon, August 8, 1859. The plaintiffs, on the afternoon of the next day, received notice that the wheat had been sent from Tully to Chenango Forks, and the following night the wheat was consumed by fire ; and on the 10th of August the plaintiffs sent for and demanded the wheat. It was held that the defendant was not liable as a common carrier, for the wheat and that the plaintiffs could not recover. The rule was laid down, in that case, that, when a railroad carrier safely transports goods to their place of destination, and, finding no one there to receive them, or to whom notice can be given of their arrival, places them in its freight-house, and keeps them there uninjured for a resonable time, ready for delivery, it ceases to be liable as a common carrier; and that it is not necessary for the carrier to give notice of the arrival of the goods to a consignee, who, as in that case, did not reside at, or in the immediate vicinity of, the place to which the goods were consigned.

- The courts below defeated the defendant in this case, upon the erroneous assumption that it was an intermediate carrier, within the meaning of the cases first above cited, and, hence, that this case was controlled by the principles laid down in those cases. The contract of an intermediate carrier is to carry the goods to the end of his route, and their deliver them to the next carrier for further transportation. The contract of the final carrier is to transport the goods to their place of destination, and there deliver them to the consignee or owner; and such was the contract in this case. Here the goods were consigned to F. P. Fenner, Dunkirk, and defendant undertook to carry them to Dunkirk, and there deliver them to the consignee, and it had no duty whatever as to their further transportation. It was the duty of the plaintiff, or her consignee, to take the goods at Dunkirk, and see to, or arrange for, their further transportation. The defendant, in this case, was no more an intermediate carrier than the defendant in the case of *Northrop* v. *The Syracuse, Binghamton and New York Railroad Company*. The rule to be applied to this case, then,

is the one that is applicable to carriers who carry goods to their final destination. This rule is not very definitely determined in this State. In Massachusetts, and some of the other States, it is settled that the moment a railroad carrier carries goods to their final destination, according to its contract, and deposits them in its freight-house, ready for delivery, its liability as carrier ceases, and it remains liable simply as a warehouseman. But this rule has not been adopted in this State, and should not be. It is not always, or generally, practicable for the consignee to be present, on the arrival of the goods, to receive them; and it is just as important that the carrier should continue to be liable, as an insurer of the goods, for a reasonable time after their arrival, until the consignee can have an opportunity to take charge of them, as that it should thus be liable during the transit of the goods to their place of destination.

At an early day, when all goods were carried upon land in wagons, it was generally the duty of the carrier to deliver the goods to the consignee personally, or at his place of residence or business. This was so because the carrier could go anywhere with his wagons and make the delivery. But carriers upon water, as they were confined by their means of transportation to the water, were bound only to deliver their goods upon the wharf or pier; and if the consignee was present, it was his duty at once to take charge of the goods. If he was not present, but lived at the place of destination, it was the duty of the carrier to give him notice of the arrival of the goods. If he was absent, dead, or could not be found, the carrier discharged his duty by depositing the goods in a warehouse, subject to the order of the consignee. It seems to me that substantially the same rules, and for the same reasons, should be applied to a railroad carrier. It is obliged to stop at the depot, as the water carrier is at the wharf, and unless the consignee is present on the arrival of the goods to take them from the cars, it must, as is the well known and uniform custom, place them in its freight-house. From the drift of the decisions in this State, I think we may fairly infer

the following rules as to the delivery of goods at their place of destination by a railroad carrier: If the consignee is present upon the arrival of the goods, he must take them without unreasonable delay. If he is not present, but lives at or in the immediate vicinity of the place of delivery, the carrier must notify him of the arrival of the goods, and then he has a reasonable time to take and remove them. If he is absent, unknown, or cannot be found, then the carrier can place the goods in its freight-house, and, after keeping them a reasonable time, if the consignee does not call for them, its liability as a common carrier ceases. If, after the arrival of the goods, the consignee has a reasonable opportunity to remove them, and does not, he cannot hold the carrier as an insurer. The carrier's liability thus applied and limited, I believe will be found consonant with public policy, and sufficiently convenient and practicable. (See *Powell* v. *Myers*, 26 Wend., 591; *Fisk* v. *Newton*, 1 Denio., 45; *Jones* v. *The Norwich and New York Trans. Co.*, 50 Barb., 193; *Roth* v. *Buffalo and State Line R. R. Co.*, 34 N. Y., 548; *Northrop* v. *Syracuse B. and N. Y. R. R. Co.*, *supra*.)

Within these rules of law, I think the defendant in this case was not liable for the loss of the goods in question. The teamster, Austin, was plaintiff's agent. He had notice of the arrival of the goods, and paid the freight and gave the defendant a receipt for them. Just at that time the railroad employe was engaged in delivering other freight. But there was no refusal to deliver these goods, and, so far as appears, no unwillingness to deliver them; and I think we are bound to infer, that if Austin had demanded the goods, they would have been delivered to him. It was getting late, and as Austin intended to return again the next day, for his convenience, the goods were permitted to remain. I say for *his* convenience. It matters not that it was also for the convenience of the railroad employe, or for their mutual convenience. It is sufficient that Austin could have had the goods, and that they were left under an arrangement in which he participated, and to which he assented, as much for his

convenience as for the convenience of the other party. Suppose the arrangement had been to leave the goods there a week, or a month, for their mutual convenience, would the railroad company have remained liable as a common carrier? Here, then, there is a case where the consignee's agent had notice of the arrival of the goods and had an opportunity to remove them, and he left them in the defendant's freight-house, because it was more convenient for him to call for them the next morning. Under such a state of facts, when the goods were thus left in the freight-house for the mutual accommodation and convenience of both parties, should the law impose upon the one party the responsibility of an insurer? I think not, and that neither justice nor public policy requires that, upon the facts existing in this case, the defendant should be held liable as a common carrier.

I am therefore in favor of reversing the judgments and granting a new trial, costs to abide the event.

LEONARD, C.  The referee held this case to be within the principle decided in *Ladue* v. *Griffith* (25 N. Y. R., 364). The General Term held that it was within the decision in *Goold* v. *Chapin* (20 N. Y., 259). In each of those cases, the goods were destroyed at a place intermediate the place of shipment and of delivery. In one case the goods were placed in a floating barge belonging to the carrier, for transhipment by another line. In the other case in a storehouse of the carrier, for the same purpose. It was held that goods to be transported by intermediate carriers were in the possession of each intermediate carrier, until delivery to the next one on the route, and so on, from one carrier to another, until the goods reached the place of final destination. The Court of Appeals refused to consider such an intermediate carrier, who had stored the goods in his own floating barge or storehouse at the termination of the route of such carrier, waiting for the next carrier to receive them, as subject to any less liability than attached to the carrier while the goods were in actual transportation. The carrier was regarded as an insurer, under

such circumstances, and not as a warehouseman, relieved of a degree of liability.

In the present case, the goods were marked for delivery at Dunkirk, to which point the defendant safely conveyed them and there placed them in its storehouse. The plaintiff wished the goods carried further by another agent, whom she had authorized to demand and receive the goods from the defendant at Dunkirk. The defendant was not an intermediate carrier. The goods had been carried to the destination where the defendant had been requested to deliver them, as must be inferred from the marks on the packages.

In my opinion, the present case differs wholly from the cases referred to by the referee and the General Term. The defendant had performed its contract. It was ready to deliver. It had ceased to be a carrier, and was then keeping the goods in safe custody till the plaintiff chose to take them.

It would be an unreasonable liability to attach or continue that of common carriers, after the goods had been safely brought to their destination, had been removed from the defendant's cars, and placed in a depot or warehouse for delivery when called for by the owner or agent. If the goods were to be carried further, it was under a new contract, with which the defendant had no connection. The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur for reversal, and concur in the reasoning of EARL, C.

Judgment reversed and new trial granted, costs to abide the event.