RICHARD M. ODERKIRK, APPELLANT, *v.* JAMES C. FARGO, AS PRESIDENT OF AMERICAN EXPRESS COMPANY, RESPONDENT.

*Express company — responsibility of, for a trunk left at its office after a receipt therefor is signed and the charges are paid.*

In an action brought against an express company to recover damages for the loss of the plaintiff's trunk, it appeared that the trunk reached the office of the company, at Watertown, on Saturday, and that the following Monday, in the forenoon, the plaintiff called at the office, stated that he wanted to take out some things that belonged to one Smith and then leave the trunk there until the following day or the next, to which the agent of the company replied that if the plaintiff paid the charges and signed the receipt book he could do so, and that it would be all right; whereupon the plaintiff paid the charges and signed the receipt book, took out the things, and then locked the trunk and left it at the office of the company. On the following Wednesday he went to the office and was informed by the agent that the trunk had been delivered to other parties the day before upon the assumption that the plaintiff had sent for it.

The court, upon the ground that there had been a complete delivery of the trunk to the plaintiff, and that the company ceased to be liable in any capacity therefor,

and that the agreement with the agent that the trunk might remain did not bind the defendant, granted a nonsuit on the trial.

*Held,* that as the jury might have found that the agent of the company in making the arrangement for leaving the trunk was acting within the apparent scope of his authority, and that such arrangement was made before the payment of the charges and signing of the receipt, and as there had been no termination of the transaction with the company so far as the custody of what was left in the trunk was concerned, as that remained with it, as it had before, in the office of the company and under the control of its agent, that a proper case was presented for submission to the jury and that the nonsuit was erroneously granted.

APPEAL by the plaintiff Richard M Oderkirk from a judgment of Jefferson County Court, entered February 12, 1890, in favor of the defendant against the plaintiff, dismissing the complaint, with costs.

The action was commenced in Justice's Court and was brought to recover the value of a trunk and its contents which had been sent by direction of plaintiff by express from Stony Creek, Warren county, N. Y., to Watertown, N. Y., and carried over the defendant's line from Rome to Watertown, but not, as claimed by plaintiff, delivered to him. The plaintiff recovered before the justice; the defendant appealed to the County Court, and upon the trial there the plaintiff was nonsuited.

*E. C. Emerson,* for the appellant.

*Thomas F. Kearns,* for the respondent.

MERWIN, J.:

Upon the trial of this case it appeared that the trunk of plaintiff reached the office of the defendant company, at Watertown, on Saturday, October 26, 1889. The following Monday, in the forenoon, the plaintiff, who lived a short distance out of town, called at the office and found there his trunk. He testifies that on that occasion he said to the agent of the company, there in charge of the office, that he wanted to take some things out that belonged to one Smith and then leave the trunk there till the following day, or the next, to enable him to have it taken to his place by some teams drawing brick, and the agent replied that, if the plaintiff paid the charges and signed the receipt book, he could take the things out and leave the trunk and it would be all right; that he then paid the charges and signed the receipt, opened the trunk and took out some things, then locked it and left it there. Upon the following

Wednesday he went again to the office and was informed by the agent that the trunk had been delivered to other parties the day before, upon the supposition that the plaintiff sent for it. The plaintiff further testified that he never authorized any one to go and get the trunk, and had never received it. As to the delivery, the agent testified that two men with a team called at the office, asked for the Oderkirk trunk, said that the charges were paid and that it was receipted for, and that he then pointed out to them the trunk and they took it, and that he did not ask them for any order, or whether they had any authority from Oderkirk to send for it, and he didn't know who the men were.

The claim of the defendant is that, upon the plaintiff's evidence, there was a complete delivery to the plaintiff and the company ceased to be liable in any capacity, and that any agreement with the agent that the trunk might remain did not bind the defendant.

The court adopted this view and granted a nonsuit. The plaintiff asked to go to the jury upon the question whether there was such a delivery by defendant and acceptance by plaintiff as terminated the obligation of the defendant as a common carrier; also, on the question whether the delivery of the property by defendant's agent to a third party was such negligence as rendered the defendant liable as warehouseman; also, as to whether the defendant did not assume the obligation of gratuitous bailee, and was not guilty of such gross negligence in the misdelivery of the property as made it liable. The court denied each of these requests and the plaintiff excepted.

The property was allowed to remain at the express office for the convenience solely of the plaintiff. This, according to the doctrine laid down in *Fenner v. Buffalo and State Line Railroad Company* (44 N. Y., 505), would relieve the defendant from liability as a common carrier. In that case the goods, after the freight was paid and the receipt signed, were, for the convenience of both parties, allowed to remain over night in the freight-house of the defendant, and during the night the freight-house and goods were burned up without any fault or negligence of defendant. It was held that defendant could not be held as an insurer.

It does not, however, follow that because liability as a common carrier had ceased there was no liability at all. In *Tarbell* v. *Royal*

*Exchange ·Shipping Company* (110 N. Y., 170) it is said : "That in many cases a carrier's whole duty in respect to goods carried by him is not discharged by a constructive delivery, terminating his strict responsibility as a carrier. Although a consignee may neglect to accept or receive the goods, the carrier is not thereby justified in abandoning them, or in negligently· exposing them to injury.   *   *   * So long as he has the custody of the goods, although there has been a constructive delivery which exempts him from liability as carrier, there supervenes upon the original contract of carriage, by implication of law, a duty as bailee or warehouseman to take ordinary care of the property." Upon that basis the defendant in that case was held to be liable for a portion of the goods lost or taken by wrong parties during the process of delivery.

In *Matteson v. New York Central and Hudson River Railroad Company* (76 N. Y., 381), which was an action to recover for loss of baggage, the plaintiff upon her arrival at her destination gave her checks, three in number, to the baggage master for the purpose of obtaining one of her packages, and informed him that she desired to leave the other two there for a week or two. This the baggage master told her she could do by giving him the checks, and he assured her the trunks would be just as safe without the checks as with them. The checks and two trunks were thereupon left with him, and when plaintiff called for one of the trunks afterwards it could not be found, it having been delivered by the baggage master to a stranger. The baggage master was prohibited by the defendant from thus keeping baggage, and he testified that he so informed plaintiff, but this she denied. It was held to be a question for the jury whether there was a delivery of the trunk by defendant to plaintiff and a termination of its responsibility .

In the present case, according to the evidence of the plaintiff, the agent of the defendant, before the charges were paid and the property receipted, agreed that plaintiff might take away a portion and leave the balance, with the assurance that it would be all right. If this was so, it should not be said, as matter of law, that there was a delivery to and acceptance by the plaintiff of the whole. There was no termination of the transaction with the carrier. The custody of what was left remained as it had been before. It was in the office of the company and under the control of its agent.

But it is said that the agent of the company had no power to bind the company to the agreement or consent that the property be left. This seems to have been the main ground for the nonsuit. The agent testifies that he had no such authority, but he does not say that he so informed the plaintiff. If, as testified to by the plaintiff, and as might have been found by the jury, the arrangement for leaving the trunk was made before the payment of the charges and the signing of the receipt, and with a view to give the plaintiff a reasonable opportunity to send for his goods, it would be a matter within the apparent scope of the authority of the agent, managing there the business of the company, and would bind the company in the absence of any notice to the plaintiff of any restriction on the agent's authority. (*Curtis* v. *Avon, G. and M. M. R. R. Co.*, 49 Barb , 148; *Isaacson* v. *N. Y. C. and H. R. R. R. Co.*, 94 N. Y., 278; Story on Agency, § 126.) At least it should not be said, as matter of law, that the company would not be liable.

It follows that the nonsuit was improperly granted, and that the request of the plaintiff to go to the jury on the question of the negligence of the defendant as warehouseman should have been granted.

Judgment is reversed upon the exceptions and new trial ordered, costs to abide the event.

MARTIN, J., concurred; HARDIN, P. J., not sitting.

Judgment reversed on the exceptions and a new trial ordered, with costs to abide the event.