DODGE & DENT MANUFACTURING COMPANY, Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

First Department, December 29, 1916.

Carriers — interstate commerce — bill of lading construed — provision that carrier may store goods not removed by consignee — storage of goods in warehouse at owner's risk — provision that claims for loss must be made within four months — when consignor cannot hold carrier for conversion — conflict of laws — when Federal statutes and decisions govern.

When the bill of lading of goods which are the subject of interstate commerce provides that if they are not removed by the party entitled to receive them within forty-eight hours after due notice of their arrival they may be kept in cars or place of delivery of the carrier, or in a warehouse, subject to a reasonable charge for storage, the carrier to be responsible as a warehouseman only, but that the goods at the option of the carrier may be stored at a public or licensed warehouse at the cost of the owner and held at his risk without liability on the part of the carrier, the owner is not entitled to hold the carrier as for a conver-

sion of the goods where he received due notice that the consignee refused to accept or pay for the goods, and paid no attention to the matter for over a year during which period the goods were stored and subsequently sold by the warehouseman under his lien for charges.

Moreover, under the circumstances, the carrier was relieved of the liability by a clause in the bill of lading provided that all claims for loss, damage or delay must be made in writing to the carrier at the point of delivery within four months after a reasonable time for delivery has elapsed and that unless claims are so made the carrier shall not be liable.

The construction of a bill of lading of interstate shipments and the liability of the carrier are to be determined by the Federal statutes and decisions.

Under the Federal decisions an initial carrier is not liable for any breach of duty on the part of any final carrier acting as warehouseman.

Under the Federal decisions the limitation of liability contained in the bill of lading aforesaid with respect to the presentation of the claim, is, if not complied with, a bar to an action against the carrier for loss arising either from negligence, or for conversion of the goods by an unauthorized delivery thereof.

APPEAL by the defendant, Pennsylvania Railroad Company, from a determination and order of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of May, 1916, affirming a judgment of the Municipal Court of the City of New York, borough of Manhattan, fifth district.

*Ray Rood Allen*, for the appellant.

*I. Balch Louis*, for the respondent.

LAUGHLIN, J.:

After issue was joined herein on a complaint and answer the controversy was submitted on an agreed statement of facts, pursuant to the provisions of section 124 of the New York City Municipal Court Code (Laws of 1915, chap. 279). The pleadings are not in the record, and the submission does not state the judgment to which each party claims to be entitled; but the stipulated facts show that it is an action by the consignor of goods shipped from New York to its own order at Chicago, Ill., with directions to " notify Mrs. Lidia J. Hopkins," at an address given in Chicago, against the initial carrier to recover the value

of the goods shipped on the failure of the initial carrier to return them to the consignor on demand, after Mrs. Hopkins, on due notice from the final carrier, had failed to accept them, and they had been sold at public auction for the lien, for storage, of a warehouse company with which they had been stored by the final carrier after having been held by it from the time of their arrival at their destination on November 29, 1913, until May 15, 1914. On the 4th of May, 1914, the final carrier gave Mrs. Hopkins due notice that the goods would be so stored if not removed or other disposition thereof directed by her, but she paid no attention thereto. The goods were delivered to the initial carrier on the 24th of November, 1913, to be shipped, and were accepted for shipment and shipped by it in accord-- ance with the terms and provisions of the classification and tariff and supplements thereto relating to the shipment of inter- state commerce theretofore duly approved and in effect at the time; and it duly issued its bill of lading therefor at the reduced rate accorded by said tariff for the transportation and delivery of the property. The consignor on December 1, 1913, drew its sight draft on Mrs. Hopkins for $450, payable to the order of Fort Dearborn National Bank, Chicago, Ill., on deliv- ery to her of the original bill of lading, which it attached to the draft and forwarded to said bank. The draft and bill of lading were returned to the consignor on January 29, 1914, with notice that the draft had not been paid and that Mrs. Hopkins had given no attention to the bank's notices to her. That was notice to the consignor that the goods had not been accepted by or delivered to Mrs. Hopkins, for the final carrier could not lawfully deliver them to her without the surrender of the order bill of lading, which the plaintiff, so far as appears, still retains. Notice that the goods remained "on hand" at their destination "at Chicago, Madison St.," and were "unclaimed and undelivered," was also given to the consignor by the *defendant* on January 5 and February 24, 1914, and it duly requested that the consignor give it notice of any change desired with respect to the *consignee, destination or disposi- tion* of the property. No attention was given by plaintiff to said notices, and nothing further was heard either from Mrs. Hopkins or the plaintiff, either by the initial carrier or by the

final carrier until the 30th of March, 1915, when plaintiff through its attorneys inquired by letter, referring to defendant's said notice to plaintiff on February 24, 1914 — more than a year before — where the goods were stored and the amount due for storage thereon. On the 5th of April, 1915, plaintiff demanded the return of the goods, but they had been sold by the warehouse company on October 20, 1914, and the amount realized was less than its lien.

Section 5 of the bill of lading provided as follows: "Property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

Section 3 of the bill of lading provides, among other things, as follows: "Claims for loss, damage or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after the delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

Counsel for appellant claims that the initial carrier is relieved from liability by virtue of these provisions of the bill of lading, both on the ground that its duty as *carrier* ceased on the failure of Mrs. Hopkins or the consignee to remove the goods within forty-eight hours after the notice to her, and on the ground that no claim for damages was made within four months after a reasonable time for delivery. Counsel for the respondent contends that there is no evidence that the final carrier, after the lapse of the forty-eight hours, kept the property "in car, depot or place of delivery of the carrier, or warehouse," as provided in section 5 of the bill of lading, and that the provisions of section 3 of the bill of lading, herein quoted, are not

applicable to the facts of this case. I am of opinion that the contentions of the appellant are right on both points.

The notices given to the plaintiff by the defendant prior to the delivery of the property to the warehouse company by the final carrier, that the property was held by the final carrier at destination, together with the stipulated fact that the property was thereafter delivered by the final carrier to the public warehouse company for storage, sufficiently show that in the meantime the property was held and kept by the final carrier either "in car, depot or place of delivery, * * * or warehouse" of the carrier. If there had been any claim on the part of the respondent that the property had not been so kept, it is reasonable to suppose that it would have so stipulated the facts. The claim now made by counsel for respondent with respect to the insufficiency of the evidence on that point is most technical and without merit. There is no evidence or claim of any *damage* to the property. The only claim is for the conversion thereof, and that is predicated upon the theory that the final carrier had not fully discharged its duty *as carrier* when it delivered the property to the public warehouse company, for the reason that it should have been stored to the order of the plaintiff as consignee, instead of in the form in which it was stored, viz., "Order Dodge & Dent Mfg. Co. Notify Lidia J. Hopkins," which was nearly literally as they were consigned. The form in which the goods were consigned was notice to the carrier that Mrs. Hopkins was not the owner of the goods. (*Isham* v. *Erie Railroad Co.*, 112 App. Div. 612. See, also, *Wien* v. *New York Central & H. R. R. R. Co.*, 166 App. Div. 766, 769.) Notice of the sale was given to Mrs. Hopkins in advance, but the only notice given to plaintiff was by a publication of the notice of sale in Chicago, containing a recital of the form in which the goods were so stored with the warehouse company. It is contended in behalf of respondent that the act of the final carrier in so storing the goods constituted a conversion thereof and deprived plaintiff of its right to reclaim the goods and to receive notice of sale for the lien for storage charges, and that the defendant as the initial carrier is liable therefor. This was a shipment of interstate commerce, and, therefore, the construction of the bill of lading and the

liability of the carrier are to be determined by the Federal statutes and decisions. (*Georgia, Florida & Ala. Railway* v. *Blish Co.*, 241 U. S. 190; *Adams Express Co.* v. *Croninger*, 226 id. 491; *United Lead Co.* v. *Lehigh Valley R. R. Co.*, 156 App. Div. 525; affd., 215 N. Y. 751.)   On these facts, the duty of the carrier as carrier had ceased, and the duty of the final carrier had become that of a warehouseman long prior to the time it delivered the property to the warehouse company; for even if the duty of notifying the plaintiff that the goods had not been accepted by Mrs. Hopkins devolved on the carrier, such notice had been given by defendant long before the final carrier was acting as warehouseman, and the initial carrier is not liable for any breach of duty on the part of the final carrier as warehouseman. (*Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, 205; *Adams Express Co.* v. *Croninger, supra,* 511; *Becker* v. *Pennsylvania R. R. Co.*, 109 App. Div. 230; *Fenner* v. *Buffalo & State Line R. R. Co.*, 44 N. Y. 505; *Norfolk & Western Ry. Co.* v. *Stuart's Draft Milling Co.*, 109 Va. 184; *Wien* v. *New York Central & H. R. R. R. Co.*, 166 App. Div. 766.)

It is now settled by controlling Federal decisions that such a limitation of liability as that contained in section 3 of the bill of lading, with respect to the presentation of the claim, is, if not complied with, a bar to an action against the carrier for loss arising either from negligence or for conversion of the goods by an unauthorized delivery thereof. (*Georgia, Florida & Ala. Railway Co.* v. *Blish Co.*, 241 U. S. 190; *Missouri, Kansas & Texas Railway* v. *Harriman*, 227 id. 657.  See, also, *Davenport* v. *Chesapeake & Ohio R. Co.*, 87 Misc. Rep. 303.)

In conclusion, it may be observed that there is no evidence that any loss would have been sustained by the plaintiff if, on receiving notice by the return of the draft and bill of lading and by the written notices from the defendant that Mrs. Hopkins refused to accept the goods, it had given the carrier instructions with respect to a disposition of the goods as defendant requested, and as was its duty. (*Manhattan Shoe Co.* v. *C., B. & Q. R. R. Co.*, 9 App. Div. 172.)

It follows that the determination of the Appellate Term

should be reversed, with costs, the judgment of the Municipal Court reversed, with costs, and the complaint dismissed, with costs.

McLAUGHLIN, SCOTT, DOWLING and DAVIS, JJ., concurred.

Determination reversed, with costs; judgment of Municipal Court reversed, with costs, and complaint dismissed, with costs.