## NORTHROP v. SYRACUSE, &c. RAILROAD COMPANY.

### June, 1867.

Where the consignee of goods transported by a railroad company is absent from the terminus of their route upon the railroad, and has no agent there to whom delivery can be made or notice given, and the goods are not called for in a reasonable time, the company may terminate their liability as carrier, by depositing the merchandise in a warehouse; although it is otherwise of an intermediate carrier, whose duty it is to deliver to the next carrier on a road beyond.[*]

Louis and Edward P. Northrop and the Syracuse, Binghamton & New York Railroad Company, having a controversy in reference to the liability of the company for wheat belonging to plaintiffs, and destroyed in the company's freight-house by fire, submitted the controversy to the supreme court, by a statement of facts, for determination without action.

The defendants were common carriers; and on August 8, 1859, received from plaintiffs, at Tully, twenty-two bags of wheat, directed to the plaintiffs, at Chenango Forks, and agreed to transport the same accordingly. They carried the wheat, by their railroad, from Tully to Chenango Forks, where it arrived on August 8, at a place called Chester Village.

The plaintiffs were merchants and millers, and resided at Center Village, fifteen miles from the depot; and no one was present to receive the wheat on its arrival at the depot. It was accordingly deposited by the company in their freight-house at Chenango Forks, on the afternoon of August 8. On the afternoon of the next day, plaintiffs received information from Tully that the wheat had been sent forward to Chenango Forks, and on the following day, the tenth, they sent to the

---

[*] Followed in Salinger v. Simmons, 8 *Abb. Pr. N. S.* 409; S. C., 2 *Lans.* 325; Ely v. New Haven Steamboat Co., 8 *Abb. Pr. N. S.* 72; S. C., 53 *Barb.* 207.

The question what is a reasonable time, is one of law. Allowance is not made for the preoccupation of the consignee by other business, or the inadequacy of his teams, &c. Hedges v. Hudson River R. R. Co., 49 *N. Y.* 223; reversing 6 *Robt.* 119.

depot for it; but at about eleven o'clock on the night of the ninth, it was destroyed by fire in the freight-house of the company.

*The supreme court* held, that as reasonable time had expired for the consignees, had they been in the vicinity of the depot, to have called for the goods before the fire, the liability of the defendants as common carriers ceased upon the lapse of such reasonable time, and there being no proof of negligence, they were not liable as warehousemen. The plaintiffs appealed.

*Henry R. Mygatt*, for plaintiffs, appellants;—Insisted, that the rule in Ladue *v.* Griffiths, 25 *N. Y.* 368, was applicable; citing, also, McDonald *v.* Western R. R. Corp., 34 *N. Y.* 503. Notice was essential. 29 *Barb.* 45; 19 *Wend.* 241; 2 *Kent Com.* 608; 2 *Pars. on Cont.* 189; 5 *Am. Law Reg. N. S.* 692.

*S. S. Davis*, for defendants, respondents.

Bookes, J. [After briefly stating facts.]—The question is, whether on the facts stated the defendants were discharged from their liability as common carriers. It seems they had conveyed the property safely to its place of destination, and, no one being there to whom they could make delivery, it was deposited, according to the usual course of business, in the freight-house. While the defendants were bound to deliver the property according to the usual course of trade or business, they were not required to go or send to the plaintiffs' residence, fifteen miles away, either to make delivery there or to notify them of its arrival. Having transported it °safely and with reasonable dispatch to the place of destination, and having held it there uninjured for a reasonable time, ready for delivery, the carrier was absolved from liability, as such, in a case like this, where the party resided at a distance, and had no agent at the place to whom notice of arrival could be given. According to the decisions in Massachusetts, railroad companies, as common carriers, are discharged when they have transported the goods safely and with diligence to the place of destination, and deposited them in their warehouse, after a reasonable time has elapsed for the owner or consignee to examine them and take them away. 1 *Gray,* 263; 10 *Metc.* 472. And it was

held in these cases that carriers (railroad companies) were not bound to give notice of the arrival of the goods. In the latter case above cited, it was said that railroad companies, from the nature of their business and from the means employed, could not deliver goods at the warehouse of the owner, when situated 'off the line of the road, as a common wagoner could do; but when they had transported the property safely to the place of destination, and stored it safely in their depot, or warehouse, their duty as common carriers terminated. In this State, however, it would seem to be requisite that notice of its arrival should be given to, the consignee, in case he resides or has a place of business at the place of destination, or in its immediate vicinity. But it is not necessary here to consider the question whether the liability of a railroad company, as common carriers, continues until they notify the consignee of the arrival of the goods, and until a reasonable time thereafter has elapsed to remove them, in a case where the consignee resides at the place of consignment, or has an agent there to receive them. The facts in this case do not raise this question. The rule is, stated in general terms, that the common carrier is bound for the diligent and safe transportation of the goods, and for their delivery to the owners or consignees, according to the usual course of business and the nature of his contract. If there be no person at the place of destination to receive the goods, it is enough that they are placed on deposit in a warehouse, and after a reasonable time has elapsed for their examination and removal, his liability as carrier ceases.

The application of these principles to the case before the court will exonerate the defendants from liability. The property had arrived at its place of destination in safety, and had remained in the freight-house uninjured one full day and part of another. It had not been called for, nor did the owner and consignee reside in the vicinity. Its destruction after that period by an accidental fire, created no liability against the defendants.

The judgment appealed from should be affirmed, with costs.

.DAVIES Ch. J. [After stating the facts.]—The precise point presented for adjudication in this case was decided by the supreme court of this State more than twenty years since. Fisk

*v.* Newton, 1 *Den.* 45. In that case the court said: " So, when goods are safely conveyed to the place of destination, and the consignee is dead, *absent,* or refuses to receive, or is not known and cannot after due efforts are made be found, the carrier may discharge himself from further responsibility, by placing the goods in store with some responsible third person in that business, at the place of the delivery, for and on account of the owner. . . . The risk of the carrier ceased on the delivery of the goods in store." This seems to be the well-recognized rule, where the goods are carried to the point of ultimate destination—the place of delivery to the consignee. Thomas *v.* Boston & Providence R. R. Co., 10 *Metc.* 472 ; Norway Plains Co. *v.* Boston & Maine R. R. Co., 1 *Gray,* 263. The case of Fisk *v.* Newton is cited approvingly by JOHNSON, Ch. J., in Goold *v.* Chapin, 20 *N. Y.* 259 ; and the doctrine there enunciated is repeated and reaffirmed in the same case by STRONG, J. He says: " It is not intended to decide that common carriers can in no case change their peculiar responsibilities, while they retain possession of the ·goods confided to them. They may not be able with due diligence to find any one to receive the goods in behalf of the owner, and there may not be any safe place of deposit within their reach, and in such case their duties as carriers would end, and they would then become mere ordinary bailees. They may also deposit the goods in their own warehouse, and thus absolve themselves from any further responsibility as common carriers. That, however, can only be where there has been a failure by the owner or his agent to receive them."

These views are specially pertinent to the case now under consideration. There the carrier, as carrier, had performed his whole duty as such. The goods had securely arrived at their place of destination. The consignee was absent, residing some fifteen miles distant. He had no agent to whom delivery could be made, or to whom notice could be given. Can the consignee, by his neglect of duty in this regard, continue the strict liability of the carrier until it shall suit his convenience or pleasure to call for the goods ? I think not, and that the carrier can properly do what he did in this case—deposit the same in a freight-house—and that then his strict liability as

carrier ceases. This court said, in the case of Goold v. Chapin, that the carrier could do this, and thus absolve himself from any further responsibility as common carrier. It is a misapprehension to suppose that any contrary doctrine has been enunciated by this court. A brief review of the cases will show this. In Goold v. Chapin, *ubi supra*, the goods were delivered to the defendants in New York, to be carried to Albany, and there to be delivered to another carrier, to be transported to Brockport, N. Y.; and the parties to whom the delivery was to be made at Albany, were to receive the goods, not as owners, but as carriers. Instead of delivering the goods to the carrier, who was further to transport them, or depositing them in a warehouse until called for by the carrier, the defendants placed them upon a float, where they remained for several days, until consumed by fire. And Hunt, J., in his opinion in McDonald v. Western R. R. Co., 34 *N. Y.* 497, correctly states the point decided, thus: " This court held that the defendants were liable as carriers; that the notice to the Atlantic line, and their unreasonable neglect to take the goods, did not exempt them; that, to exempt themselves, the carriers must store the goods in a warehouse, or in some other way clearly indicate a renunciation of the relation of the carrier; " and he adds, " The court held that, as there was neither a deposit in a warehouse, which would have indicated clearly a renunciation of the carrier's liability, or a delivery to the carrier by canal, which would have fulfilled the duty of the first carrier, the defendants were liable." In Ladue v. Griffiths, 25 *N. Y.* 364, the facts were that a warehouseman at Buffalo, who was also a carrier on the Erie Canal, used to receive freight from the west and forward it to the east by the first boat going, whether his own or that of other carriers. He received goods shipped from Detroit, addressed to his care at Buffalo, and marked to go from " Buffalo to East Albany, at 30 cents per 100 lbs." The presumption, from these facts alone, this court held, was, that the goods came to his possession as a carrier, and having been burned without his fault, while in his warehouse awaiting transportation, he was liable for their value. This decision was placed on the distinct ground that public policy, in this country of long routes and frequent transhipment, forbids any

intendment which would favor an intermediate carrier in divesting himself of that character, and assuming the more limited responsibility of a forwarder. In McDonald *v.* Western R. R. Co., *ubi supra,* it was held that "where goods were shipped and must pass through the hands of several intermediate carriers before arriving at the place of their destination, the duty of each intermediate carrier is to transport the goods safely to the end of his route, and deliver them to the next carrier on the route beyond. That an intermediate carrier, in such case, does not relieve himself from liability by simply unloading the goods at the end of his route, and storing them in his warehouse, without delivery, or notice to, or any attempt to deliver to, the next carrier."

These cases are all based upon the controlling fact, that the carrier in whose custody the property was destroyed was an intermediate carrier, and that in no instance had the goods reached their ultimate destination. That such intermediate carrier could not change the character of his liability by a deposit of the goods in a warehouse. But not one of these cases infringe upon the doctrine of Fisk *v.* Newton, but on the contrary, recognize it as sound law. We think the rule laid down in this latter case is controlling upon that now under consideration, and that upon the circumstances disclosed in this case, the liability of the defendants as common carriers ceased when they safely transported the property in question to the point agreed upon, and that the consignee, being absent at the time of its delivery, and they having no agent there to receive the same or to whom it could be delivered, or to whom notice of its arrival could be given, it was the duty of the carrier, and his whole duty, to deposit the same in a warehouse, and thereafter these defendants ceased to be liable as common carriers.

The judgment appealed from should be affirmed, with costs.

All the judges concurred.

Judgment affirmed, with costs.