---

BERMEL v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, Second Department. June 7, 1901.)

CARRIERS OF GOODS—LIABILITY AS BAILEE—LIMITATION OF LIABILITY BY CONTRACT—NEGLIGENCE.
    Where a bill of lading limited the liability of a carrier of goods, its liability as bailee for hire remained unimpaired, so that, though it was not liable as carrier beyond the amount named in the contract, it was liable as bailee for the full value of the goods when negligently injured.

Appeal from trial term, Queens county.
    Action by Joseph Bermel against the New York, New Haven & Hartford Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

George Coggill (Henry W. Taft, on the brief), for appellant.
J. Bohmbach, for respondent.

WOODWARD, J. This action was brought to recover $122 as damages for injuries done to a granite monument belonging to the plaintiff, who alleges in his complaint "that while the said monument was being so carried and conveyed the same was, as plaintiff is informed and believes, through the negligence, carelessness, and misconduct of said defendant's servants, thrown from the car upon which it was loaded and being carried, by said car being negligently and carelessly allowed to come into collision with certain other cars or train propelled by steam, and used in and about the defendant's railroad business," etc. The answer does not deny the allegation of negligence, and specifically admits "that the defendant took said monument for the purpose of conveying and carrying the same from Quincy Adams station to Smith's Dock, Greenpoint, New York, and that the same was thrown from a car and damaged." The defense interposed is a special acceptance, by which it is claimed that the liability of the defendant is limited to $29, with interest from the date of the loss, rather than the full amount of the actual damages.

The facts, as gathered from the pleadings and the evidence, appear to be that the plaintiff purchased the monument in question from Swingle & Falconer, of Quincy Adams, Mass., who were to deliver the same free on board the cars at that point, consigned to the plaintiff at Greenpoint, N. Y., and that Swingle & Falconer, as we shall assume, acting as the agents of the consignee, filled out the customary bill of lading, which was subsequently signed by the agent of the defendant at the shipping point. This bill of lading, in so far as it is material to the question here involved, provides that:

"It is mutually agreed, in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained, and which are hereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable. * * * The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value has been agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

Upon the face of this bill of lading was stamped the words, in the proper space reserved for a description of the articles:

"6 p'cs box'd granite momnts. Owner's risk released. Valuation restricted to 40 cts. per cubic foot."

This appears to have been done with a rubber stamp owned by Swingle & Falconer, who appear to have been in the habit of mak-

ing shipments under these terms; and it is claimed that the freight
rate upon this shipment was $2.75,—a lower rate than would have
been given, except for the limitation expressed in the bill of lading.

At the close of the evidence the defendant's counsel moved for
a direction of a verdict in behalf of the plaintiff for $29, with in-
terest; this "being the 40 cents per cubic foot, which was the
amount agreed upon in the contract of shipment as the amount to
which the plaintiff's recovery should be restricted in case of loss."
At the same time plaintiff's counsel moved for a direction of a ver-
dict to the extent of the full injury to the monument. The court,
thus left to the determination of the law and the facts, directed
a verdict for the plaintiff for $122, the full amount of damages
claimed, to which the defendant duly excepted. In making this
direction the learned court held, "There is enough to find negli-
gence on, and the exemption does not include negligence."

The question thus presented upon this appeal is whether the de-
fendant has by its contract exempted itself from liability, to the
extent of the special acceptance, for its own negligence. While
the evidence of negligence is not very strong, it is practically con-
ceded as the basis of responsibility by the defendant, in its failure
to deny the allegation of negligence made by the plaintiff; and un-
der the rule suggested in Steers v. Steamship Co., 57 N. Y. 1, 15
Am. Rep. 453, we may, in support of the judgment, deem the neg-
ligence of the defendant to have been established. Passing over
the fact that the written contract pleaded by the defendant does
not show that any rate of freight was agreed upon for the ship-
ment, or that there was in fact any reduction in the rate, we will
assume the contract to be complete, and that the shipment was
made under the conditions alleged, so that the question of law
alone may be disposed of without complication. There has been
some confusion upon this point, and while it is not to be doubted
that a common carrier may by its contract be relieved of liability,
even for its own negligence (Westcott v. Fargo, 61 N. Y. 542, 553,
19 Am. Rep. 300, and authorities there cited), the courts do not
favor these contracts, and general words will not be construed to
accomplish this result. Considerations of public policy demand
that common carriers should discharge fully their duties to the
public, and to give adequate notice of any immunity from the com-
mon-law obligations, and conditions of bills of lading or other con-
tracts intended to limit liability come properly within the rule that
the words are to be taken most strongly against the party whose
language they are, and who is in an advantageous position in fixing
the terms of the contract. Westcott v. Fargo, supra. This confu-
sion results in a large measure from a failure to recognize that a
common carrier has in truth two distinct liabilities,—the one, for
losses by accident or mistake, where he is liable, by the custom of
the realm or the common law, as an insurer; the other, for losses
by default or negligence, where he is answerable as an ordinary
bailee. Dorr v. Navigation Co., 4 Sandf. 136, 145; Id., 11 N. Y.
485; Wheeler v. Navigation Co., 125 N. Y. 155, 160, 26 N. E. 248,
21 Am. St. Rep. 729, and authorities there cited. Commenting upon

these authorities, the court say in the latter case that (page 161, 125 N. Y., and page 249, 26 N. E.):

"These cases show that the liability for negligence as bailee survives even when by special contract the carrier has thrown off his liability as such, and the courts of this state have exhibited a very decided purpose to retain and enforce that liability wherever it is possible. Even that may be thrown off by force of a special agreement, but we have refused to permit any general words to accomplish such result, and have insisted that, where the carrier seeks to contract against the consequences of his own negligence, he must say so openly and plainly, so as not to be in the slightest degree misunderstood, and is not at liberty to hide the stipulation away under any form of words, however broad or formidable."

See, also, Kenney v. Railroad Co., 125 N. Y. 422, 425, 26 N. E. 626, and authorities there cited; Jennings v. Railway Co., 127 N. Y. 438, 450, 28 N. E. 394.

Speaking of similar restrictions in Rathbone v. Railroad Co., 140 N. Y. 48, 50, 35 N. E. 418, the court say:

"It is well settled that these stipulations in the contract will not be construed to relieve the carrier from liability for his own negligent acts. His duty and obligation to exercise a proper degree of care of the property while in his custody is not affected by them. Full and sufficient scope is given to their operation when it is held that they exempt the carrier from his common-law responsibility as an insurer of the property. It is not reasonable to suppose that the parties intended to contract that a bailee for hire might with impunity be careless and remiss in the discharge of the trust reposed in him. If such a result is intended, it must be so stated expressly and unequivocally in the contract. General words are not sufficient."

It is not to be doubted that, in cases where the property transported is of unusual or extraordinary value, a notice that the carrier will not be responsible for loss if the true character or value of the articles is not stated at the time of shipment, unless extra freight is paid, will operate to exempt the carrier from liability even for his own negligence (Rathbone v. Railroad Co., supra); but this is based upon the theory that silence on the part of the shipper, under such circumstances, is such a fraudulent concealment from the carrier of a material fact affecting his liability as to exempt him from his obligation to transport with due care, but this question is not involved in the case now before us. The conditions of the contract are confined to the duties and obligations of the defendant, not as a bailee for hire, but as a carrier. Its language is that "it is mutually agreed, in consideration of the rate of freight hereinafter named, as to each carrier of all or any of said property," etc., and that "the amount of any loss or damage for which any carrier becomes liable shall be computed," etc.; and no mention is made of negligence, nor is there any suggestion that the defendant is to be relieved of its obligations as a bailee of the goods intrusted to its care. This distinction is clearly recognized in the well-considered case of Wheeler v. Navigation Co., supra, where the court say of a common carrier (page 160, 125 N. Y., and page 249, 26 N. E.) that:

"By force of his public employment, he became an insurer of the property intrusted to his care, and liable for its loss, irrespective of the cause, unless from the act of God or the public enemy. But involved in this greater liability and absorbed by it was a lesser liability as bailee for hire, of no con-

sequence while the greater liability existed, but surviving the destruction of that, so that when the carrier ceased to be liable as carrier he yet remained liable as bailee."

A bailee for hire is liable for negligence in dealing with the goods in his possession, and a provision of a contract limiting the liability of the defendant as a carrier cannot be construed to exempt it from liability as a bailee for hire; nor is the plaintiff limited in his right of recovery to the amount fixed for the violation of the contract to carry. As bailee the defendant made no limitation upon its liability. It assumed the duty of exercising reasonable care, and having failed in the discharge of this duty, by negligently permitting the injury to the monument, it is justly chargeable with the full amount of such damage.

The case of Zimmer v. Railroad Co., 137 N. Y. 460, 33 N. E. 642, at first reading seems to run counter to the conclusion here reached. But in that case the contract was of a special character. It was headed, "Live-Stock Contract of Release and Agreed Valuation According to the Official Classification of the New York Central and Hudson River Railroad," and "recited that the company transported live stock at certain prices at carrier's risk, and at reduced prices, upon certain risks being assumed by the shipper, and upon the condition that the property was valued as stated below. The contract then read: 'Now, in consideration that said company will transport at said reduced prices one horse, valued at not exceeding $100, * * * consigned to G. P. Coolidge, at Antwerp, N. Y., it is * * * agreed that in the event of the loss, death, or injury of the animals, or any of them, from causes which would make the carrier liable, such liability shall not in any case exceed an amount to be fixed according to the above valuation.'" The horse was killed through the negligence of the railroad company, and the owner brought an action to recover the value of the horse, alleged to be $5,000, on which he recovered a verdict for $3,100. The judgment was reversed on appeal to the general term on the ground that the contract limited the recovery to $100, and this was supported on appeal to the court of appeals. It will be observed, however, that this comes within the spirit of the exception to the general rule. The railroad company, by requiring the contract briefly outlined above, had given notice that it would not be responsible for goods of unusual or extraordinary value unless this fact was disclosed at the time of making the shipment; and the shipper, having declared the value of the horse at $100 for the purpose of securing the concession in rates, could not be permitted to charge the railroad company with an established value for the horse. It operated as a fraud upon the defendant, which had presumably omitted the care it would otherwise have bestowed, and had been deprived of the freightage to which it would have been entitled had the larger risk been assumed. In effect, the owner of the horse contracted to take all of the risks of transportation and as bailee, except to the extent of $100; and this is the view taken by the court, for it is said:

"The appellant's counsel argues that this clause limiting the liability of the company does not refer to an injury or death which is occasioned by its neg-

.ligence as a bailee, but we think the language is far too general in the clause itself to bear him out. The agreement of the company was to transport the horse at a reduced rate upon the condition that its value should be as stated, .and we would fail to give adequate effect to the agreement and its consider-.ation if we should hold that the company had not limited the extent of its liability in all events."

In the case now before us there is no special contract. The shipment was made in the ordinary course of business, and there is nothing to indicate that the contracting parties ever intended to ·give the defendant immunity for its own negligence. It is violated ·duty that furnishes the ground of an action for negligence (Brewer v. Railroad Co., 124 N. Y. 59, 65, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647), and the damages in an action of negligence cannot be fixed by the contract for carriage, unless the defendant show his immunity on the face of his agreement (Nicholas v. Railroad Co., 89 N. Y. 370, 375).

The judgment appealed from should be affirmed, with costs. All .·concur.