ual defendant was a "shareholder and otherwise interested in the company," and that on July 18, 1907, the said company being insolvent and in contemplation of insolvency, and with the intent of giving a preference to the individual defendant, executed and delivered to said defendant chattel mortgages upon automobile sight-seeing touring cars which were then the property of the company. It is not alleged that these chattel mortgages were given without consideration, or upon inadequate consideration, or in payment of an antecedent debt due to said defendant. It is alleged that, at the time of the execution of the mortgages, the automobiles mortgaged constituted the sole assets of the company, and that its liabilities exceeded its assets. The plaintiff treated the demurrer as frivolous, and moved for judgment upon that ground; but, so far is it from being frivolous, it is clearly good. The transfers of which plaintiff complains are alleged to have been made on July 18, 1907, and there is no allegation that on that date plaintiff was a creditor of the corporation or held any claim against it. All that is said on that score is that "prior to the 1st day of May, 1908," the plaintiff commenced an action, but when the death of plaintiff's decedent occurred which gave rise to the action does not appear. It is probably true that plaintiff became a creditor as soon as he was appointed administrator because the liability of the defendant corporation accrued when the death occurred.

[2] If the death had been caused before the transfer, although judgment was not entered thereon until afterwards, the plaintiff could maintain the action (Kain v. Larkin, 4 App. Div. 209, 38 N. Y. Supp. 546); but there is no such allegation.

We are also of the opinion that no cause of action is stated against Charles Burkelman in his representative capacity. Even if he held shares in the defendant corporation as executor, and the chattel mortgage was in form made to him as executor, the cause of action the plaintiff has attempted to set out is one against him personally, and not against the estate of which he is executor.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the motion for judgment denied, with $10 costs. All concur.

---

BOYLE v. BUSH TERMINAL R. CO. et al.

(Supreme Court, Appellate Division, Second Department. June 21, 1912.)

1. CARRIERS (§ 49*)—CARRIAGE OF GOODS—BILL OF LADING—ACCEPTANCE.
   A shipper's acceptance of a bill of lading binds him whether he reads it or not.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 142–147; Dec. Dig. § 49.*]

2. CARRIERS (§ 158*)—CARRIAGE OF GOODS—VALUATION OF PROPERTY—LIMITATION OF LIABILITY.
   A clause in a bill of lading issued to a shipper of household goods that liability was "released to $5.00 per 100," and that the consignor had the option of shipping at a higher rate without limitation as to value in case

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

, of loss or damage from causes which would make the carrier liable, but agreed to the specified valuation in case of loss or damage from such causes, because of the lower rate, did not limit the liability. of the carrier for damage arising from its own negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½; Dec. Dig. § 158.*]

3. Shipping (§ 132*)—Loss of Goods—Negligence—Res Ipsa Loquitur.

The sinking of a carrier's float containing freight while at the dock in a slip is such an event as, unexplained, creates a presumption of negligence which will render the carrier liable to the owner of the goods.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

Appeal from Trial Term, Kings County.

Action by John Boyle against the Bush Terminal Railroad Company, impleaded with another. From a judgment of the Supreme Court entered in the office of the clerk of the County of Kings, in favor of plaintiff, and from an order denying its motion for a new trial, defendant Bush Terminal Railroad Company appeals. Judgment and order affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

·Edward D. Kelly, of Brooklyn, for appellant.

Wilmot L. Morehouse, of Brooklyn, for respondent.

CARR, J. On January 23, 1907, the plaintiff delivered to the defendant the New York Central & Hudson River Railroad Company a number of household articles to be shipped from Kingston, N. Y., to Bush's Dock at Brooklyn, N. Y. The goods were carried over the West Shore Line to its terminal on the bay front in New Jersey, and were thence carried by the defendant the Bush Terminal Company on its floats to its docks or terminal in Brooklyn. Shortly after the arrival of the float at the Bush docks, and before the plaintiff had an opportunity to receive the goods, the float, while in a slip, sank to the bottom of the East River, from causes which do not appear in this record. After the float was brought to the surface, the plaintiff came and examined some of the packages, and the contents were found to be either wholly or greatly destroyed. He demanded that the goods be examined and inventoried. The defendant the Bush Terminal Company refused to make any examination or inventory, but directed the plaintiff to take them away as they were and put in his claim afterwards. On his refusal to do so, the terminal company placed them in one of its storage warehouses, which shortly thereafter was destroyed by fire and the goods consumed entirely. The plaintiff thereupon brought this action against both defendants to recover damages. The complaint was dismissed as to the railroad company, and a verdict was rendered by the jury at the trial against the terminal company in favor of the plaintiff for the sum of $1,600, and from the judgment entered thereon the terminal company appeals.

The more important question arising upon this appeal is whether the plaintiff had, by special contract with the original carrier, limited

the liability of all the carriers to a fixed amount for any loss arising from any cause including negligence of the carriers. When the goods were delivered to the original carrier at Kingston, a bill of lading was made out, on which was indorsed a special contract signed by the shipper and of which what purported to be a copy was delivered to the shipper. This bill of lading was on the usual printed form, with provisions on the face and back thereof, containing on its face various blank spaces to be filled in writing. These blank spaces were in three separate columns. The first column as filled out reads as follows:

"Marks: Consignee John Boyle, Bushes Dock, Place 46th St., County Brooklyn, State Released to $5. per 100."

The second column was headed, "Description of Articles," and contained the words, "Sixty (60) pc H. H. Goods." The third column was headed, "Weight, Subject to Correction," and contained the figures, "3750." In the second column was printed by rubber stamp words as follows:

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage from causes which would make the carrier liable, because of the lower rate thereby accorded for transportation."

This clause was signed by the plaintiff as shipper. There was likewise a signed receipt on the face of the bill of lading for the sum of $8.63, "to apply in prepayment of the charges on the property described above." The copy of the bill of lading delivered to the shipper was identical in form and contents, save that the special contract in the second column was written out in ink, and that the copyist, unintentionally no doubt, omitted therefrom parts of the original as it appeared in rubber stamp on the original bill of lading, so that it read as follows:

"The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable because of the lower rate thereby accorded for transportation."

This was signed likewise by the shipper.

[1] At the trial the plaintiff testified that he had not read the bill of lading, but its acceptance by him bound him whether he had read it or not. Hill v. Syracuse, etc., R. R. Co., 73 N. Y. 351, 29 Am. Rep. 163; Wheeler v. Oceanic Steam Navigation Co., 72 Hun, 5, 25 N. Y. Supp. 578, affirmed 149 N. Y. 576, 43 N. E. 990; Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, 9 Ann. Cas. 909.

[2, 3] The learned trial court held as a matter of law that the terms of the bill of lading were not sufficient to limit the liability of the carrier against damage arising from its own negligence, and that the sinking of the float, without explanation from the defendant, gave rise to a presumption of negligence. Thus under this theory the only question for the jury was an assessment of damages on the

proofs presented as to value of the articles destroyed by the sinking of the float. Within the rule laid down by this court in Bermel v. New York, N. H. & H. R. R. Co., 62 App. Div. 389, 70 N. Y. Supp. 804, affirmed on opinion below 172 N. Y. 639, 65 N. E. 1113, the learned trial court was correct in its ruling, unless that authority did not control. It was there held that a contract between a carrier and a shipper which attempted to limit the liability of the shipper could not exempt or limit the liability of the shipper for its own negligence, unless the contract plainly and unequivocally made reference to the negligence of the shipper as one of the causes of damage as to which there was a limitation of liability. While that case was affirmed in the Court of Appeals on the opinion written for this court by Woodward, J., there was nevertheless a dissenting opinion in the higher court. A few years thereafter the Court of Appeals had before it a somewhat similar, or quite analogous, question in Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, 9 Ann. Cas. 909. In that case it was held, by a divided court, that a passenger who had delivered baggage to the defendant for transportation could not recover damages beyond the amount stipulated in the passage ticket, even where the cause of loss was the negligence of the carrier and no reference had been made in the stipulation as to negligence as a cause of loss. In that case the stipulation was as follows:

"It is also agreed that neither the shipowner, nor the passage broker or agent, nor the ship, is in any way liable for loss of or injury to or delay in delivery of luggage or personal effects of the passengers beyond the amount of fifty dollars, unless the value of the same in excess of that sum be declared at or before the issue of this contract, or at or before the delivery of said luggage to the ship, and freight at current rates for every kind of property is paid thereon."

In that case no declaration as to excess value had been made. In the Tewes Case, the court makes no reference to its earlier decision in the Bermel Case, and the briefs of counsel as they appear in the reports likewise contain no reference to it. Later, and quite recently, the same question came again before the Court of Appeals in Gardiner v. N. Y. C. & H. R. R. R. Co., 201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, and the decision was again by a divided court on a vote of four to three of the justices thereof. In that case the passenger sued for loss of baggage. She was the holder of a "fifty-trip family ticket," issued at reduced rates. The ticket contained a number of conditions:

"In consideration of the reduced fare at which this ticket is sold."

One of them was as follows:

"That this company's liability for baggage belonging to each passenger shall not exceed fifty dollars ($50)."

It was held that this stipulation or condition was effective to limit damages even where the loss occurred through the negligence of the carrier. In that case its former decision in the Bermel Case was

called to the court's attention, and it was observed in the majority opinion of the court:

"The case of Bermel v. N. Y., N. H. & H. R. R. Co., 62 App. Div. 389, 70 N. Y. Supp. 804, affirmed 172 N. Y. 639, 65 N. E. 1113, must be regarded either as decided on the special features of that case or else as limited in its application to a case like the present one by our decision in the Tewes Case."

The "special facts" of the Bermel Case are practically the same as those in the case at bar. If the Bermel Case is yet authoritative as to its "special facts," it should control in the case at bar. Has it been so limited by the Tewes Case as not to apply here? In the Tewes Case the stipulation as to limited liability is quite different in form. There the agreement between the parties was in essence that the carrier should not be liable above the sum of $50 unless the passenger paid freight at current rates upon his baggage so far as its value exceeded $50. In other words, the carrier was to transport free of freight charges the baggage of the passenger provided its liability was limited to $50 for any cause of loss. Again, in the Gardiner Case, the baggage was practically carried free of charge up to a valuation of $50. For, as it is well known, whether the passenger on these reduced fare tickets brings baggage with him or not, the rate of fare is the same. This circumstance was recognized by the majority of the court in the Gardiner Case, for, as was said by Hiscock, J., in his opinion for the majority, in reference to the interpretation of the condition set forth in the "trip ticket":

"The choice is between an interpretation that this was a mere general clause releasing the carrier from liability without any reference to the character and value of the goods and one that it fixed the amount and value of free baggage which a passenger could check on this ticket and limited the carrier's liability to that amount."

And of these two interpretations, the majority of the court, speaking through Hiscock, J., chose the latter. If this be so, then the authority of the Bermel Case as to its own or similar facts remains unshaken and controls in this case, for here there is no agreement contemplating free carriage on condition of a limited liability.

As to the other questions presented by the appellant as to its liability as "a warehouseman" and as to the sufficiency of the proof as to value of the goods destroyed, we see no sufficient reason for interference with the judgment. The nature of the goods in question was such that they were destroyed practically for all purposes by their immersion in the river when the float sank to the bottom, and they were nothing but wreckage when the float was lifted to the surface. The proofs as to the value of the various articles was probably the best that could be given under the circumstances. The jury made a very large cut in the values claimed.

The judgment and order should be affirmed, with costs. All concur.