THE PENNSYLVANIA RAILROAD COMPANY, Respondent, *v.* THE BANK OF UNITED STATES, Appellant, Impleaded with LEWIS MALKIN, Doing Business under the Name and Style of L. MALKIN & SON, Defendant.

First Department, November 27, 1925.

Sales — passing of title — sale to individual defendant f. o. b. on notify party bill of lading — plaintiff carrier through mistake sent goods on straight bill — individual defendant secured goods after paying freight charges, placed them in warehouse and transferred receipts to third person who purchased in good faith — defendant bank made loan to third person on receipts — plaintiff replevied goods — under Personal Property Law, § 101, subd. 2, title to goods would pass to purchaser on shipment on notify party bill of lading subject to payment — plaintiff's error gave purchaser possession and he then had both title and possession — under Personal Property Law, § 105, innocent purchaser for value acquired title — defendant bank is entitled to value of goods.

Where, through the mistake of a common carrier, goods which were purchased f. o. b. point of shipment, to be shipped on notify party bill of lading, were actually shipped to the purchaser on a straight bill of lading, who secured possession of the goods on the payment of freight charges, the purchaser acquired both the title and the possession of the goods and an innocent purchaser from him acquired title to the goods, for on a shipment f. o. b., the purchaser acquires title under subdivision 2 of section 101 of the Personal Property Law, even though the goods are shipped on a notify party bill of lading, subject only to the payment of the purchase price, and since, through the error of the plaintiff, the common carrier, the purchaser was permitted to acquire possession as well as title, the carrier itself must suffer the loss.

Accordingly, in an action by the carrier to replevy the goods in which it appears that after the purchaser had secured possession he placed the goods in a warehouse and transferred the warehouse receipts to an innocent purchaser for value who thereby acquired title under section 105 of the Personal Property Law and who in turn, used the receipts to secure a loan from the defendant bank, the carrier cannot recover but judgment should go for the defendant bank for the full value of the goods replevied by the carrier.

APPEAL by the defendant, The Bank of United States, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of December, 1924, upon the verdict of a jury rendered by direction of the court.

*Jacobson & Pollock* [*H. Louis Jacobson* of counsel; *Henry W. Pollock* with him on the brief], for the appellant.

*O'Brien, Boardman, Parker & Fox* [*Harold L. Allen* of counsel], for the respondent.

FINCH, J.:

The action is in replevin to recover 211 boxes of fish, and was tried on a stipulation as to the facts. The fish in question was shipped to one Malkin by the Beach Haven Ice and Cold Storage Company, under a contract calling for shipment f. o. b. Beach Haven, N. J., payment by draft, bill of lading attached.

The goods were shipped via the Pennsylvania Railroad Company, the plaintiff. Through an error on the part of the latter the shipment was sent forward on a straight bill of lading which calls for the goods upon payment of freight charges only. On the arrival of the goods Malkin was notified that there was a consignment to him on a straight bill of lading and that the shipment would be delivered to him upon receipt of freight charges. On the day previous to receiving this notification Malkin had been tendered a draft for the price of the goods with order bill of lading, but had declined to accept the same. Upon receiving the notice from the railroad company that he could have the goods upon payment of freight charges, Malkin sent a truckman for the goods with a check to cover said charges, and received delivery of the goods from the railroad. He then stored 211 boxes of the fish in a warehouse in the name of the defendant Bank of United States, and received warehouse receipts which were transferred to the Columbia River Smoked Fish Company. The latter obtained from the defendant bank a loan of $4,000 on said receipts. The bank made the loan in good faith and without knowledge of any of the aforesaid facts.

Upon discovery of the mistake the railroad company located the fish and replevied the same. Payment of the loan made by the defendant Bank of United States was refused when due, and the bank counterclaims for the value of the fish. The bank is the only defendant to appear. The court awarded judgment to the plaintiff, holding that no title passed to the consignee of the goods because there was no intention to pass title unless and until the goods were paid for; and that Malkin, in taking advantage of the mistake of the carrier, did not get title; that he had merely possession of the goods without any indicia of title or ownership, and, therefore, could convey no title to the same.

Under the rule stated in *Standard Casing Co.* v. *California Casing Co.* (233 N. Y. 413) and in *Rosenberg Bros. & Co.* v. *Buffum Co.* (234 id. 338) upon shipment of the goods f. o. b., title passed to the consignee subject only to a property right, namely, possession, of the vendor in the same, in order to secure performance of the contract, *i. e.*, payment, by the vendee. In *Standard Casing Co.* v. *California Casing Co.* (*supra*), CARDOZO, J., writing for the court

said (at p. 416): "The general rule is that upon a sale 'f. o. b. the point of shipment,' title passes from the seller at the moment of delivery to the carrier, and the subject of the sale is thereafter at the buyer's risk * * *."

While, as stated by Judge Cardozo, the operation of the foregoing rule is subordinate to the intention of the parties, there is nothing in the stipulated facts to show any intention of the parties to the contract that would take the case at bar out of the general rule. In the case of *Standard Casing Co.* v. *California Casing Co.* (*supra*) payment for the goods shipped was to be made by sight draft at point of arrival, with right in the purchaser to examine the goods, yet the court said (at p. 416): "We find nothing in this contract by which an inconsistent intention is adequately revealed. The plaintiff sees in two provisions the tokens of a purpose that arrival at the point of destination shall be a condition of performance. One is the provision that after arrival at New York the buyer may inspect. The other is that, subject to such inspection, payment shall be made on presentation of a draft with bill of lading attached. We think that each is inconclusive."

This result is in accordance with that provided in subdivision 2 of section 101 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act, which provides in part as follows: "But if, except for the form of the bill of lading, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligations under the contract." (See, also, Uniform Sales Act, § 20, subd. 2; New Jersey Sales Act [N. J. Laws of 1907, p. 320, chap. 132], § 20, subd. 2; 4 Comp. Stat. N. J. 4652, 4653, § 20, subd. 2.)

It thus appears that the goods in question were at the risk of the consignee after shipment, with title in the consignee, subject to the right in the vendor to refuse delivery until payment had been made. When, through the error of the carrier, possession of the goods was delivered up to the consignee, the consignee then, at least in so far as an innocent purchaser for value is concerned, had both title and possession, and the rule is applicable that where one of two innocent persons must suffer, the one who has rendered the loss possible should bear the same. A case in point is *Norfolk Southern Railroad Co.* v. *Barnes* (104 N. C. 25), where the court said: "A sells goods to B, and ships them by a common carrier, to be delivered to B upon the payment of the purchase money. By the negligence of the carrier, B obtains possession of the goods without paying the money and sells them to C, a *bona fide* purchaser,

for value and without notice.  Can A, or his bailee, the carrier, recover the goods from C?  \*  \*  \*  As soon as the goods were delivered to the carrier, the right of property passed to the vendee, but the right of possession remained in the vendor until the price was paid.  \*  \*  \*  This possession he lost by the negligence of his agent, and we are of the opinion that he should not be permitted to recover against the defendant who bought of the vendee in possession for value and without notice.  Of course, if the vendor could not recover, his negligent agent, the plaintiff, can have no cause of action.  We think this case falls within the principle  \*  \*  \*  that ' where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence or by his negligent conduct made it possible for the loss to occur must bear the loss.  \*  \*  \*'  Had this, however, been a conditional sale before the recent statute, an executory contract to sell, an ordinary bailment, or any other transaction which failed to pass the title, the innocent purchaser, however much he may have been misled by the possession and the apparent ownership of his vendor, would not be protected.  \*  \*  \*  Here the title passed and a delivery having been made by the negligence of the vendor's agent, the plainest principles of justice forbid a recovery.  As to the innocent purchaser, the right of property and the right of possession are united and his title is therefore complete."

The case at bar is distinguishable from the case of *First National Bank* v. *Shaw* (61 N. Y. 283), relied on by the respondent, for there it was through the bill of lading that title to the goods was claimed to pass, and that bill of lading was such as upon its face to put one upon notice that the consignee had only limited rights subject to those of the plaintiff.  As was said by the court (at p. 297): " It cannot be considered that any holder of the grain could possibly be misled by an entry, the object of which was so plain and unequivocal.  In the aspect of the case most unfavorable for the plaintiff, there were indications on the canal bill which  \*  \*  \*  were sufficient to lead to the conclusion that the plaintiff had an interest, and to put any person who took the goods upon inquiry as to its rights.  Griffin & Co., accordingly, had no right whatever to meddle with the grain, or to warehouse it.  \*  \*  \* The warehousemen  \*  \*  \*  were bound to inquire whether a bill of lading accompanied the shipment.  \*  \*  \*  Shaw & Co. simply trusted to a person having the naked possession, without any title or indicia of it."

In the case at bar defendant Malkin clearly had title, and at the most his right to possession was voidable merely and not void,

414   Manson-Jacobs Co., Inc., *v.* W. 129th St. Building Corp.

First Department, November, 1925.          [Vol. 214

and hence he could convey a good title. This is so not only at common law but also under the Uniform Sales Act and under our Sales of Goods Act as contained in our Personal Property Law. Section 105 of said Personal Property Law (as added by Laws of 1911, chap. 571) provides: " Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title." (See, also, Uniform Sales Act, § 24; New Jersey Sales Act [N. J. Laws of 1907, p. 322, chap. 132], § 24; 4 Comp. Stat. N. J. 4654, § 24.)

Since Malkin had thus both title and possession with nothing shown in this record which would put an innocent purchaser in good faith and for value upon notice that all was not as appeared, the latter could obtain an indefeasible title.

It follows that the judgment should be reversed, with costs, and judgment rendered for the appellant for $4,000, with interest and costs.

Dowling, McAvoy and Martin, JJ., concur.

Judgment reversed, with costs and judgment directed for the appellant for $4,000, with interest and costs. Settle order on notice.