ELMER G. PORTER, Respondent, *v.* THE PENNSYLVANIA RAILROAD COMPANY, Appellant.

Fourth Department, May 5, 1926.

**Carriers — carrier of goods — action by seller of grapes to recover damages on interstate shipment — contract of sale contemplated that title would not pass until grapes were accepted at point of destination — plaintiff has right to sue — question of fact whether defendant acted properly in protecting grapes after neglect of consignee to accept — error to direct verdict for plaintiff — measure of damages must be applied at time defendant's duty began — measure is actual loss.**

A seller of grapes which were shipped from Branchport, N. Y., to Philadelphia by rail has the right to maintain an action against the terminal carrier to recover damages for the failure of the carrier properly to protect the grapes after their arrival, on the neglect of the buyer to appear and accept them, since it appears from the contract of sale and the conduct of the parties to the contract, that title was not to pass until the grapes were accepted by the purchaser, and since it further appears that the defendant recognized the plaintiff's title in the property when the plaintiff appeared in Philadelphia to protect his interests.

The fact that the defendant did not immediately on the arrival of the carload of grapes in Philadelphia place the car on the unloading track was not an essential cause of plaintiff's loss, since it appears that the car was in readiness to be placed on the unloading track immediately the defendant was notified.

Upon the neglect of the purchaser who had been notified of the arrival of the grapes in Philadelphia to appear and accept them, the duty was cast upon the defendant to perform the necessary acts to protect the seller from unnecessary loss or damage because of the failure of the purchaser to accept the grapes. What this duty may be depends entirely upon the circumstances attending the par-

4

ticular shipment. In this case it was a question of fact for the jury whether the defendant failed in its duty under the circumstances, and it was error for the court to direct a verdict in favor of the plaintiff.

The damages must be determined as of the time the defendant's failure of duty began, taking into consideration the fault of the purchaser in not giving attention to the notice that the grapes had arrived. The measure of damages will be the actual loss due to defendant's neglect to care for the grapes including the freight, necessary expenditures, and interest.

APPEAL by the defendant, The Pennsylvania Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Seneca on the 22d day of March, 1924, upon the verdict of a jury rendered by direction of the court.

*Alexander S. Diven* [*George R. Allen* of counsel], for the appellant.

*George F. Bodine*, for the respondent.

DAVIS, J. In October, 1920, plaintiff had written orders from Fred Morinelli, Jr., for fifteen carloads of grapes. This controversy has arisen over four of these cars. The grapes were shipped from Branchport, N. Y., on order bills of lading, consigned to plaintiff with directions to notify Morinelli and giving him the right to inspect. Delivery was to be at Market House, Philadelphia. Defendant was the terminal carrier. " Market House " is a yard with capacity for sixty-eight cars, where perishable freight may be readily unloaded. Adjacent to this yard is the " outer yard " where cars arriving may be stored, but not unloaded, until ordered into the Market House by consignees.

There seems to have been no delay in transportation to Philadelphia. The bills of lading did not require the cars to be iced. On arrival they were placed in the outer yard. Notice of arrival was given to Morinelli in the usual manner. Without doubt he received it seasonably. He could have obtained prompt placing of the cars for unloading by giving notice.

Morinelli gave no such notice nor did he refuse to accept the shipments. It appears that he had more cars of grapes there than he could conveniently handle. He was ordering in some cars each day but these were not among the number. One had arrived on November first, and the other three on November third. Plaintiff received a telegram from Morinelli November eighth stating that two cars were leaking badly and refusing to accept without reduction in price. The next day Morinelli telegraphed that four cars of grapes were leaking and he would accept only on new terms.

Plaintiff went immediately to Philadelphia, inspected the cars, found the grapes in bad condition and gave notice to defendant who brought the cars to the Market House. The grapes were sold on

November eleventh at the best price obtainable. The defendant had given no notice to plaintiff of non-acceptance or the condition of the grapes. This action is to recover the loss caused by the delay in delivery. On the trial a verdict was directed for plaintiff.

The defendant urges here: (1) The plaintiff is not entitled to sue; (2) defendant discharged its full duty under the contract and there was no duty to notify consignor; (3) it was error to direct a verdict for damages.

The written orders and certain printed terms on the back evidenced the sale. A cash deposit was made for each car, the balance to be paid on draft. The seller was required to reimburse the buyer for defects in quality, but on goods shipped f. o. b. shipping point, the buyer assumed all risk of damage in transit not caused by the shipper. The shipment was deemed to have reached destination when placed on any railroad team track or while awaiting consignee's order for placing on such track. It was also provided that "where delivery of bill of lading or delivery order may be necessary, acceptance of such by the buyer will constitute completion of sale." The bills of lading with drafts attached were sent to a bank and were not taken up by Morinelli.

The appellant contends that title passed when the shipment was delivered to the carrier, and, therefore, plaintiff has no cause of action. The general rule as between seller and purchaser is that upon the sale of f. o. b. the point of shipment, title passes from the seller at the moment of delivery to the carrier, and the subject of sale is thereafter at buyer's risk. The reservation by the consignee of the privilege of inspection does not place the goods while in transit at the risk of the consignor, nor is the incidence of risk affected by the right retained by defendant to determine whether the bill of lading should run to consignor or to consignee. (*Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; *Rosenberg Bros. & Co.* v. *Buffum Co.*, 234 id. 338; *Pennsylvania R. R. Co.* v. *Bank of United States*, 214 App. Div. 410.)

While this is the general rule, the title may not pass if there is a contrary intent in the minds of the parties. (Pers. Prop. Law, § 99.)* By the contract of sale, acceptance of the bill of lading constituted "completion of the sale." This implies an intent that payment and the passing of title were to be concurrent. So the parties seemed to have construed it by their acts. Plaintiff recognized Morinelli's right to reject when he went to Philadelphia, asserted dominion over the property and sold it without objection by the buyer at that time or since. The defendant acquiesced by

---

* Added by Laws of 1911, chap. 571, known as the Sales of Goods Act.— [REP.

placing the cars on plaintiff's order and accepting freight charges and collecting demurrage from him. The practical construction of a contract by the parties themselves is always entitled to great weight and may, under certain circumstances, become conclusive. (*Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *Dworsky* v. *Herstein*, 207 App. Div. 333; *Halperin* v. *McCrory Stores Corp.*, Id. 448; affd., 239 N. Y. 547.) Even if we regard Morinelli as the consignee, the presumption that he was the owner might be rebutted or overcome. (*Sweet* v. *Barney*, 23 N. Y. 335, 337; *Levy* v. *Weir*, 38 Misc. 361.) Under the circumstances we may construe the contract as leaving title in the plaintiff. (*Clark* v. *Carolina & Y. R. R. Co.*, 225 N. Y. 589.) And a consignor, although not the general owner, has sufficient interest in the goods when he has paid for the carriage so that he may maintain an action to protect his rights. (*Swift* v. *Pacific Mail S. S. Co.*, 106 N. Y. 206, 213.)

It was evidently in the mind of the learned trial justice that defendant had failed in its duty by neglecting to make immediate delivery at the Market House in position to unload. We think this was not an essential cause of plaintiff's loss. Delivery at the outer yard with readiness to move the shipment promptly to the Market House when ordered, was a substantial performance of the agreement to deliver. (*Carrizzo* v. *New York, S. & W. R. R. Co.*, 145 App. Div. 566; *Pennsylvania R. R. Co.* v. *Marshall*, 147 id. 806.) Morinelli had notice of arrival and was doing nothing to facilitate acceptance. It cannot be said as a matter of law that the failure to place the cars for unloading affected the situation. The deviation in the manner of delivery was too slight to prejudice the plaintiff. (*Constable* v. *National Steamship Co.*, 154 U. S. 51.) There was no neglect or refusal to deliver. (*Fenner* v. *Buffalo & S. L. R. R. Co.*, 44 N. Y. 505, 511.)

The railroad company may have been justified in waiting a reasonable time in the expectation that these cars would be among those Morinelli was ordering placed. In the meantime the grapes were spoiling. While the original fault lay with Morinelli, there were duties the carrier was bound to recognize. If it failed to perform them, the negligent acts of Morinelli and the defendant were not concurrent but in succession. (*Zinn* v. *New Jersey Steamboat Co.*, 49 N. Y. 442.)

In respect to notice at least, Morinelli might be treated by defendant as a consignee. (See Federal Bills of Lading Act [39 U. S. Stat. at Large, 539], § 8; Id. 540, § 9, subd. c; Id. 545, § 42; Barnes Federal Code, §§ 7985, 7986, subd. c, 8019; U. S. Comp. Stat. §§ 8604dd, 8604e(c), 8604uu; *Jennings Automatic Dump Body, Inc.*, v. *Virginian R. Co.*, 137 Va. 207; 119 S. E. 147; *Hardin Grain*

Co. v. Chicago & A. R. Co., 134 Mo. App. 681.) He had the right to inspect, and the right to claim delivery upon the production of the bill of lading. When the consignee neglects or refuses to accept a shipment, certain duties are cast upon the carrier. It may not abandon the goods to destruction or unnecessarily expose them to loss and damage, but is bound to the exercise of ordinary care in preserving them. The obligation is related to its contract of carriage. (*Burnell* v. *New York Central R. R. Co.*, 45 N. Y. 184, 187; *McAndrew* v. *Whitlock*, 52 id. 40, 48.) What this duty may be depends upon the particular circumstances and may be determined as a question of fact. It might consist of icing the cars at the expense of the owner in order to preserve the shipment; or in removing the goods to a warehouse where they could have been protected at the owner's expense, thereby relieving defendant to a certain extent from liability (*Fisk* v. *Newton*, 1 Den. 45; *Fenner* v. *Buffalo & S. L. R. R. Co.*, *supra*; *Northrop* v. *Syracuse, etc., R. R. Co.*, 3 Abb. Ct. App. Dec. 386; *Williams* v. *Holland*, 22 How. Pr. 137; *The Eddy*, 5 Wall. 481); or defendant might have sold them on account of the owner for his benefit and its own protection, and to minimize the loss if it was impossible to preserve them. That right of sale of unclaimed perishable freight without notice to the owner is given by statute in this State (Railroad Law, § 68; *Leech* v. *New York, N. H. & H. R. R. Co.*, 40 Misc. 654); and elsewhere the doctrine prevails that such sale may be made on notice if possible (*Alabama Great Southern R. R. Co.* v. *McKenzie*, 139 Ga. 410) even in the absence of any statute. (*Emery & Co.* v. *Chicago, B. & Q. R. R. Co.*, 186 Iowa, 1156; 170 N. W. 540.) The fact that property is perishable imposes a special duty on the carrier. (*Tierney* v. *New York Central & H. R. R. R. Co.*, 76 N. Y. 305; *Cartwright* v. *Rome, W. & O. R. R. Co.*, 85 Hun, 517.)

There may also be a duty to notify the consignor. This duty is not absolute but depends upon circumstances. (*Weed* v. *Barney*, 45 N. Y. 344, 348; *Wien* v. *New York Central & H. R. R. R. Co.*, 166 App. Div. 766, 769; *Carrizzo* v. *New York, S. & W. R. R. Co.*, *supra*; *Manhattan Rubber Shoe Co.* v. *Chicago, B. & Q. R. R. Co.*, 9 App. Div. 172, 173, 174; *Fine* v. *Barrett*, 81 Misc. 234, 236; *Stoddard Lumber Co.* v. *Oregon-Washington R. & N. Co.*, 84 Ore. 399; Hutchinson Carriers [3d ed.], § 721.)

Where the shipment does not contain the name and address of the consignor, the right to notice is slight. (*Williams* v. *Holland*, *supra*; *Markowitz* v. *New York Central R. R. Co.*, 172 N. Y. Supp. 233.) This duty may also depend in a measure upon the attitude of the person entitled to delivery. If he simply neglects to accept or unload the goods but promises to do so shortly, or gives other

indication of that purpose, the carrier may be excused from giving immediate notice to the consignor. (*Weed* v. *Barney, supra; Landsberg* v. *Dinsmore,* 4 Daly, 490; *Grossman* v. *Fargo,* 6 Hun, 310.) Lisewise, the carrier is excused if the consignor receives notice from another source, for having such notice he is required to take active measures to care for the property. (*Wien* v. *New York Central & H. R. R. R. Co., supra; Manhattan Rubber Shoe Co.* v. *Chicago, B. & Q. R. R. Co., supra; Norfolk & Western R. Co.* v. *Stuart Draft Co.,* 109 Va. 184.) Here consignee gave notice, and as the drafts were in the bank, proper vigilance might have disclosed their non-payment.

As bearing on defendant's conception of its duty to notify, plaintiff offered in evidence portions of defendant's demurrage tariff. Certain provisions in substance required notice to be given the consignor when carload freight was refused at its destination, and unclaimed perishable carload freight had not been disposed of shortly after notice of arrival had been given to consignee. These rules were doubtless adopted as a foundation of charges against shippers for demurrage. They cannot be said to impose liability on the carrier or to fix definitely its duty to notify a shipper for his benefit in case of consignee's failure to accept. But it is at least a recognition of a duty to give notice under certain circumstances. A person familiar with the tariff might have the right to rely on such notice. It is somewhat analogous to a custom of giving notice to a shipper so that failure to notify may impose liability. (*Emerson* v. *Chicago, Burlington & Q. R. R. Co.,* 120 Minn. 84.)

The question whether defendant failed in its duty under the circumstances stated, was one of fact; and we deem the direction of a verdict error.

The question of damages may be important on another trial. Damages in such cases are ordinarily measured by the difference between the value of the goods at the time and place they ought to have been delivered or otherwise protected, and the time of their actual delivery, allowing a reasonable time after arrival for delivery (*Sherman* v. *Hudson River R. R. Co.,* 64 N. Y. 254; *Frey* v. *New York Central & H. R. R. R. Co.,* 114 App. Div. 747), particularly in the absence of any special contract. (*Ward* v. *New York Central R. R. Co.,* 47 N. Y. 29.)

The plaintiff relies on a special contract contained in section 3 of the conditions on the bill of lading. This provided in brief that damages should be computed on the basis of the invoice price. While parties may ordinarily agree on a measure of damages by contract, either by limitation or agreement on method of appraise-

ment (*Bermel* v. *New York, N. H. & H. R. R. Co.*, 62 App. Div. 389; affd., 172 N. Y. 639; *Boyle* v. *Bush Terminal R. R. Co.*, 210 id. 389) since the adoption of the First Cummins Amendment in 1915,* such provisions in the bill of lading are invalid, and the plaintiff is entitled to recover his actual loss on the basis of value at the place of destination. (*Chicago, M. & St. P. R. Co.* v. *McCaull-Dinsmore Co.*, 253 U. S. 97; *Wabash R. Co.* v. *Holt*, 263 Fed. 72.) The only exception to this rule is that prescribed by the Second Cummins Amendment of 1916,† as amended by the Transportation Act of 1920,‡ excepting common carriers from the liability for full actual loss where rates for shipments of freight are based on values declared by shippers, in which cases recovery is limited to such declared values. (See *Lancaster* v. *McCarty*, 267 U. S. 427; *American Railway Express Co.* v. *Lindenburg*, 260 id. 584.) As stated by counsel for the defendant, these latter statutes are not in issue in this case.

The measure of damage must be applied at the time the defendant's failure of duty began, taking into consideration the fault of Morinelli. Then the actual loss due to defendant's neglect including freight, necessary expenditures and interest make the correct measure. (*Sherman* v. *Inman S. S. Co.*, 26 Hun, 107; *Frey* v. *New York Central & H. R. R. R. Co.*, *supra.*)

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

HUBBS, P. J., CLARK, SEARS and CROUCH, JJ., concur.

Judgment reversed on the law and a new trial granted, with costs to appellant to abide event.