J. M. RODRIQUEZ & CO., INC., Plaintiff, *v.* MOORE-MCCORMACK LINES, INC., et al., Defendants.

First Department, March 2, 1972.

*Michael C. Bernstein* of counsel (*Bernstein, Weiss, Parter, Coplan & Weinstein,* attorneys), for plaintiff.

*Lawrence J. Mahoney* of counsel (*Dougherty, Ryan, Mahoney, Pellegrino & Giuffra,* attorneys), for Moore-McCormack Lines, Inc., defendant.

MURPHY, J. The sole issue involved on this submission of controversy pursuant to CPLR 3222 is the correct measure of damages to be applied in connection with plaintiff's conceded loss.

Plaintiff is the bona fide purchaser of a clean " on board " bill of lading for 200 sacks of cloves received by defendant, a common carrier, for shipment to plaintiff at New York.

Defendant's vessel, the *S.S. Mormacpenn,* which received the goods on October 30, 1968, docked at New York on or about December 20, 1968, but was unable to discharge any of its cargo because of an east-coast longshoremen's strike. The strike ended on or about February 15, 1969; defendant's vessel discharged its cargo between said date and February 21, 1969; but the goods in issue could not be located and defendant failed to make delivery.

It is conceded that the sound market value of the shipment of cloves at New York was $19,980 on December 19, 1968 and $41,070 on the date the strike ended. Accordingly, plaintiff is entitled to judgment for one or the other of these amounts.

The general rule of damages for failure to deliver cargo has been stated to be their market value as of the date when it should

have been delivered (Longley, Common Carriage of Cargo, p. 207; *Goltzman* v. *Rougeot*, 122 F. Supp. 700) and as of the date it should have arrived (*San Giorgio* v. *Rheinstrom Bros. Co.*, 294 U. S. 494; *Interstate Steel Corp.* v. *S. S. Crystal Gem*, 317 F. Supp. 112). It would appear, however, that no distinction was intended since "normally, goods are delivered within a reasonable time after the ship docks" (*Hess Int. Corp.* v. *Isthmian S.S. Co.*, 5 A D 2d 250, 254).

In measuring the applicable Statute of Limitations, however, the delivery date is clearly the one that governs. "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered" (Carriage of Goods By Sea Act, U. S. Code, tit. 46, § 1303, subd. [6]).

As we stated in *Hess Int. Corp.* v. *Isthmian S.S. Co.* (*supra*, p. 253), after recognizing that a period of time generally elapses between the time a ship docks and the time its cargo is discharged: "There is no question that where a carrier fails to deliver goods within one year after the goods should have been delivered, the statute * * * discharges it of all liability in any action brought to recover for nondelivery."

In order to complete its contract, by effecting delivery, the carrier was required to discharge its cargo to a fit and safe place on a pier or wharf, furnish notice to the consignee of its availability and afford the consignee a reasonable opportunity to take the goods away (*The Titania*, 131 F. 229).

Since plaintiff's cause of action accrued, and the period of limitation began to run, from the date the goods should have been delivered, it follows that the measure of damages must also be applied as of that date (*Porter* v. *Pennsylvania R.R. Co.*, 217 App. Div. 49; *The Marie Bakke*, 260 F. 2d 181). Moreover, it is only by computing the damages as of such later date, when the loss was apparently first discovered, that the plaintiff consignee can be made whole.

Accordingly, unless the interposition of the strike mandates a different result, the measure of damages must be computed as of February 15, 1969, the date the strike ended and the goods should have been delivered.

In such connection, the Carriage of Goods By Sea Act (U. S. Code, tit. 46, § 1304) provides, in pertinent part:

"(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from— * * *

"(j) Strikes or lockouts or stoppage or restraint of labor from whatever cause, whether partial or general".

We read the statute, however, as merely suspending the carrier's obligation to perform its contract. Defendant was required to deliver the goods when it was able to and the strike merely extended such delivery date for both parties. The ship, in effect, arrived at the dock when the strike was over. Plaintiff's damage, however, resulted from defendant's unexplained nondelivery and not because delivery was prevented by the strike.

In light of the foregoing, we direct that judgment be entered for plaintiff in the sum of $41,070, with interest, costs and disbursements.

Settle order.

CAPOZZOLI, J. (dissenting). The threshold question which must be answered, in deciding the damages to be awarded herein, is when did the breach of the carriage contract take place? It is as of that time that the damages should be fixed. The proper measure of damages is the market value of the cloves at destination on the date when they should have arrived. Whether the cloves were lost before the ship arrived, or thereafter, is immaterial. The fact is that, in the absence of a strike, the truth would have been known and, if there was failure to deliver the cloves to the consignee, then the carrier would have been responsible in damages for the value thereof, as of that time.

Accordingly, damages should be fixed at $19,980.

MARKEWICH, J. P., NUNEZ and STEUER, JJ., concur with MURPHY, J.; CAPOZZOLI, J., dissents in an opinion.

Upon a submission of a controversy, it is directed that judgment be entered for plaintiff in the sum of $41,070, with interest. Plaintiff shall recover of defendants $50 costs and disbursements of this submission of a controversy.

Settle order on notice.